I adhere to the first opinion, and agree with the court's action in refusing the rehearing.

(57 South. 989.)

No. 19,270.

COGUENHAM v. AVOCA DRAINAGE DIST. et al.

(Feb. 26, 1912.)

*(Syllabus by Editorial Staff.)*

1. INJUNCTION (§ 118*)—ISSUANCE OF DRAINAGE BONDS—PETITION.

A petition to enjoin the issuance of bonds of a drainage district, which alleges in general terms without specifications that the forms prescribed by law were not observed in the formation of the district and in the proceedings for the issuance of the bonds, is insufficient.

[Ed. Note.—For other cases, see Injunction, Dec. Dig. § 118.*]

2. STATUTES (§ 123*)—TITLE—SUFFICIENCY.

The title of Act No. 317 of 1910, being an act to amend Act No. 159 of 1902, authorizing commissioners of drainage districts to levy taxes, when authorized by a vote of the taxpayers, so as to further enlarge the powers of drainage commissioners, and authorizing the drainage of lands by leveeing and pumping, and the maintaining of such drainage system by the levying of an acreage tax, is sufficiently broad to include a provision authorizing the levy of a tax without a previous election.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 130–132, 176–183; Dec. Dig. § 123.*]

3. CONSTITUTIONAL LAW (§ 24*) — TAXATION —STATUTES—VALIDITY.

Act No. 317 of 1910, §§ 9, 23, 27, authorizing the levy of any tax "which is now or may hereafter be authorized by the Constitution," etc., is valid as anticipatory legislation with a view of an amendment of the Constitution, article 281 of which limits the tax per annum to 25 cents per acre, and on the adoption of the amendment in 1910, authorizing the issuance of drainage bonds and acreage taxes not exceeding $3.50 per acre per annum, which is self-executing, the commissioners of a drainage district may issue bonds and levy an acreage tax of $1.15 per acre for the first year's interest.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 21–29; Dec. Dig. § 24.*]

4. CONSTITUTIONAL LAW (§ 29*)—SELF-EXECUTING PROVISIONS.

A constitutional provision which is complete in itself is self-executing.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 32; Dec. Dig. § 29.*]

5. CONSTITUTIONAL LAW (§ 290*)—DUE PROCESS OF LAW—LEVYING OF TAXES.

Under the rule that due process of law in the imposition of local taxes is satisfied where the property owner is afforded an opportunity to be heard before the tax becomes a final charge on his property, Act No. 317 of 1910, authorizing drainage taxes and giving any property owner the right to appeal within a specified time to the courts to test the validity of the proceedings, is not invalid as denying due process of law, since the levy remains in suspense during the specified period to afford an owner an opportunity to be heard.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 871–875; Dec. Dig. § 290.*]

Appeal from Twenty-Third Judicial District Court, Parish of St. Mary; Charles A. O'Neil, Judge.

Action by Manuel Coguenham against the Avoca Drainage District and another. From a judgment for defendants, plaintiff appeals. Affirmed.

C. J. Boatner, for appellant. Foster, Milling, Brian & Saal, for appellees.

PROVOSTY, J. Manuel Coguenham, the plaintiff, owns lands situated within the limits of subdrainage district No. 1 of the Avoca drainage district. He brings this suit against the commissioners of the said drainage district and the sheriff of the parish of St. Mary, where said drainage district is situated, to enjoin the issuance by said commissioners of $300,000 of bonds for said subdrainage district, and the collection by the sheriff of an acreage tax of $1.15 per acre levied by said commissioners upon the lands of said subdrainage district to pay the first year's interest upon the said bonds.

[1] The petition contains a number of allegations to the effect that the forms prescribed by law were not observed in the formation of said district and in the proceed-

ings for the issuance of the said bonds and the levy of said tax; but these allegations are couched in general terms, without specification of the respects wherein the forms of law were not observed, and nothing is better settled than that such vague and general allegations add nothing to a petition. Moreover, in this court, plaintiff has expressly waived them, and admitted that they were entirely without foundation.

[2] No election was held to authorize the levy of said tax, but same is proposed to be levied under the provisions of Acts Nos. 256 and 317 of 1910, which authorize the commissioners of drainage districts to levy such a tax for the district, or for a subdistrict, whenever petitioned by the owners of two-thirds of the area of the district or subdistrict; that is to say, without an election being held to authorize same. And the plaintiff contends that said provisions of said acts thus authorizing such tax to be levied without a previous election are unconstitutional and null because the intention of enacting same is not expressed in the titles of the acts. The title of Act No. 317 is a full synopsis of the act and is very long. The pertinent part reads:

"An act to amend Act No. 159 of 1902, entitled:
"An act to * * * authorize them" (the commissioners of drainage districts) "to levy taxes conformably to the provisions of Act No. 5 of 1899 and to article 281 of the Constitution" (i. e., when authorized to do so by a vote of the taxpayers); "so as to further enlarge the duties and powers of drainage commissioners; * * * authorizing the draining of lands by leveeing and pumping, and the maintaining of such drainage system by the levying of an acreage tax or forced contribution."

It will be noted that the intention is expressed "to further enlarge the powers of drainage commissioners," and that one of the respects in which it is announced that the powers are to be enlarged is that of levying an acreage tax or forced contribution; that is to say, of the tax in question. Under Act No. 159 of 1902 they had the power to levy taxes, and the intention is expressed of amending that act by enlarging their powers in that respect. And the enlargement consists in doing away with the necessity of holding an election. Under Act No. 159 the commissioners could levy taxes "whenever authorized to do so by a vote of the taxpayers." They were, now, by the amendment, to be authorized to do so "for the maintaining of such drainage system," with nothing said about a vote of taxpayers. Under Act No. 159, they had the qualified power to levy taxes; the qualification being a previous vote of the taxpayers. Their powers were now to be so enlarged as to be unhampered and untrammeled by any qualification, but be measured solely by the needs of the district. The intention is expressed of conferring upon the commissioners the fiat authority to levy taxes, or local contributions, "for maintaining such drainage system." The objection that the intention to authorize the said levy is not expressed in the title of the act is therefore unfounded.

[3] The next contention is that sections 9, 23, and 27 of said Act No. 317 of 1910 are unconstitutional because inconsistent with article 281 of the Constitution as said article stood before the amendment proposed by Act No. 197 of 1910 and adopted at the congressional election of that year.

The said article then stood as modified by the amendments proposed by Acts Nos. 186 of 1904 and 122 of 1906. It limited to 25 cents per acre per annum the acreage tax which drainage districts can be authorized to levy.

The said sections 9, 23, and 27 of Act No. 317 of 1910 read as follows:

"Sec. 9. Be it further enacted, etc., that in order to carry out the provisions of this act relative to the drainage of lands situated in said drainage or subdrainage districts as herein provided, the commissioners appointed or selected as aforesaid shall have the power to provide the funds necessary therefor by levying

any tax or forced contribution which is now or may hereafter be authorized by the Constitution and laws of this state."

"Sec. 23. Be it further enacted, etc., that it is especially made the duty of the drainage commissioners, not only to reclaim unreclaimed lands of their district, but when such lands are reclaimed by artificial means, such as pumping, then they must at all times maintain the necessary pumping stations to insure the continuous drainage of the said lands, and to this end they are authorized to levy such acreage tax or forced contribution as is authorized by the Constitution and laws in force at that time, and by complying with the provisions of section 9 of this act, or to use for said purpose any other funds raised in any other manner in said district."

"Sec. 27. Be it further enacted, etc., that whenever upon petition as provided for by section 9 of this act, it is decided by a board of drainage commissioners to drain certain lands by levying a forced contribution or acreage tax thereon, the said drainage commissioners shall act in said matter by resolution or motion, fully setting forth and giving in detail the number of acres in said district to be drained, as shown by the survey; the amount that the report of the engineer shows it will cost per acre to drain the lands, and proceed to provide the funds with which to drain the said lands as authorized by the Constitution and laws of this state in force at that time; which resolution when thus passed by the board of commissioners shall be notified to the assessor of the parish, by forwarding him a copy thereof in order that he may extend the acreage tax or forced contribution thus levied, upon the assessment rolls for the parish in which the property is situated, and they shall record the original in the mortgage records of the parish, and also publish same in the official journal of the parish."

It will be noted that these sections only authorize the levy of such taxes as may be authorized by the Constitution. In this there can certainly be nothing opposed to the Constitution. The only question would have to be, therefore, whether such anticipatory legislation was valid. No reason is suggested why it should not be, and that legislation may be validly enacted with a view to a future amendment of the Constitution, upon which it is to depend for its constitutionality, has been held by the Supreme Courts of Texas and Connecticut. Galveston, B. & C. Narrow Gauge Ry. Co. v. Gross, 47 Tex. 428; Pratt v. Allen, 13 Conn. 119.

The tax in question is expressly authorized by the amendment which was proposed to said article 281 by Act No. 197 of 1910 and adopted at the congressional election of that year, the relevant part of which is as follows:

"When the character of any land is such that it must be leveed and pumped in order to be drained and reclaimed, the board of drainage commissioners of the district in which the land is situated, shall, upon the petition of not less than a majority in acreage of the property taxpayers, resident and nonresident, in the area to be affected, ascertain, the cost of drainage and reclaiming said land and incur debt against said land for an amount sufficient to drain and reclaim it, and issue for said debt negotiable bonds running not longer than forty (40) years from their date and bearing interest at a rate not exceeding five (5) per centum per annum, payable annually or semiannually, which bonds shall not be sold for less than par; and said board of drainage commissioners shall levy annually upon said land forced contributions or acreage taxes in an amount sufficient to maintain the drainage of said land and to pay the interest annually or semiannually, and the principal falling due each year, or such amount as may be required for any sinking fund provided for the payment of said bonds at maturity; provided, that such forced contributions or acreage taxes, for all purposes shall never exceed three dollars and fifty cents ($3.50) per acre per annum."

[4] At the time the tax in question in this case was levied, the said amendment had already been adopted and gone into operation, and it, of itself, in the absence of any legislative act, would clearly be sufficient to authorize said tax. It reads plainly to that effect. Moreover, it expressly provides that it is to go into effect immediately, which can have no other meaning than that an enabling act is not to be necessary for it to go into effect. On the point of when constitutional provisions are self-executing, and have no need of an enabling act to carry them into effect, the following authorities are apposite and conclusive:

"It is not always easy to determine what are or what are not self-executing provisions, nor are the authorities reconcilable. Where the provision provides the rule for enforcement and fixes a penalty for violations, there can be no doubt as to its character. It is not only self-executing but prohibitive, and renders void all statutes in conflict therewith. But a provision

may be both prohibitive and mandatory and not self-executing. The question in such cases is always one of intention, and to determine the intent the general rule is the courts will consider the language used, the object to be accomplished by the provision, and the surrounding circumstances, and to determine these questions from which the intention is to be gathered the court will resort to extrinsic matters when this is necessary." 8 Cyc. pp. 753, 754.

"The question in every case is whether the language of a constitutional provision is addressed to the court or the Legislature. Does it indicate that it was intended as a present enactment, complete in itself as definitive legislation, or does it contemplate subsequent legislation to carry it into effect? This is to be determined from a consideration both of the language used and of the intrinsic nature of the provision itself. If the nature and extent of the right conferred and of the liability imposed is fixed by the provision itself so that they can be determined by the examination and construction of its own terms, and there is no language used indicating that the subject referred to the Legislature for action, then the provision should be construed as self-executing, and its language as addressed to the courts." Willis v. Mabon, 48 Minn. 150, 50 N. W. 1111, 16 L. R. A. 281, 31 Am. St. Rep. 626.

"Where it is apparent that a particular provision of the organic law shall go into effect immediately without ancillary legislation, and this can be determined by giving full force and effect to all its clauses relating to the same subject, and the language is free from ambiguity, then it becomes the imperative duty of the judicial tribunals to declare it self-executing; and where the provision is unambiguous and the purpose of the provision would be frustrated unless it be given immediate effect, it will be held self-executing." Tuttle v. National Bank of Republic, 161 Ill. 502, 44 N. E. 985, 34 L. R. A. 750; 6 Am. & Eng. Enc. p. 912, note 2.

"Constitutional provisions are self-executing when there is a manifest intention that they should go into immediate effect, and no ancillary legislation is necessary to the enjoyment of a right given or the enforcement of a duty imposed." 6 Am. & Eng. Enc. p. 912.

A constitutional provision which is complete in itself needs no further legislation to put it in force, but is self-executing. Davis v. Burke, 179 U. S. 339, 21 Sup. Ct. 210, 45 L. Ed. 249.

[5] The next contention is that, in order that there should be due process of law in the imposition of local assessments of this kind, the property owner must be notified by publication or otherwise in time to afford him an opportunity for a hearing before the levy is made; or, at any rate, in time to have recourse to the courts before the levy is made or becomes a charge upon his property; that an opportunity to have recourse to the courts after the levy is made or becomes a charge upon his property is not sufficient.

We are not aware that due process of law requires anything more than that the property owner should be afforded an opportunity to be heard before the imposition becomes a fixed and final or unquestionable charge upon his property. 8 Cyc. 1095, 1108. In Hagar v. Reclamation District, 111 U. S. 701, 4 Sup. Ct. 663, 28 L. Ed. 569, the court said:

"In some states, instead of a board of revision or equalization, the assessment may be revised by proceedings in the courts and be there corrected if erroneous, or set aside if invalid; or objections to the validity or amount of the assessment may be taken when the attempt is made to enforce it. In such cases all the opportunity is given to the taxpayer to be heard respecting the assessment which can be deemed essential to render the proceedings due process of law."

Act No. 317 provides as follows:

"Any property owner having property situated within the limits of the area proposed to be drained, shall have the right during the sixty days next following the date of publication of the resolution required by the preceding section, to appeal to the courts for the purpose of testing the validity of such proceedings, after which time the right to resort to the courts shall be forever barred."

As an effect of this provision, the levy remains in abeyance or suspense for 60 days after notice by publication, in order to afford the tax owner an opportunity to be heard. This, we think, clearly satisfies the requirement of due process of law. Lent v. Tillson, 140 U. S. 316, 11 Sup. Ct. 825, 35 L. Ed. 419.

The judgment appealed from dismissed the suit of plaintiff and affirmed the regularity of all the proceedings by which the said drainage district and subdrainage district

were organized and the said bonds authorized to be issued, and the said tax was levied, and affirmed the validity of said bonds and tax.

Judgment affirmed.