SOMMERYILLE, J.
The plaintiff corporation alleging itself to be engaged in the business of drilling for and extracting oil in this state during the years 1910 and 1911, and that it is exempt from license taxation on its business, shows that the defendant tax collector had made demand upon it for the payment of a state license tax of $53.58 for the year 1911, being two-fifths of 1 cent on each barrel of oil produced by it during the year 1910, the same being demanded under the provisions of the act passed by the General Assembly of 1910, known as Act No. 196. That act is entitled:
“An act creating a conservation fund, by levying, collecting, and enforcing the payment of an annual license tax upon all persons, associations of persons, business firms and corporations for pursuing the business of selling timber and minerals from the soil, and prescribing the mode and method in which such persons subject to license tax shall make report of their business.”
Plaintiff then proceeds to allege the unconstitutionality of Act No. 196, declaring it to be in contravention of article 229 of the state Constitution, prohibiting such license tax; secondly, that said act contravenes article 227 of the Constitution, which specially limits the exercise of the taxing power of the state to certain definite purposes therein recited; thirdly, that the act is in violation of article 225 of the Constitution, which commands an equality and uniformity of taxation; fourthly:
“The classifying as one business the severing of timber and minerals from the soil is unconstitutional, null and void, as in violation of section 1 of the fourteenth amendment of the Constitution of the United States, prohibiting the denial by the state to any person within its jurisdiction of the equal protection of the law, and also prohibiting the depriving of any person of property without due process of law.”
The petition then proceeds to set forth the inequality of the license based upon the respective prices of oil, sulphur, timber, sawed logs, etc., as bases for the amount of li cense imposed under the act. (There was no argument, either oral or printed, in support of this allegation; and it is without merit. It will not be further considered.) By an amended petition plaintiff alleged that the said act was in violation of article 229 of the state Constitution, in that the license tax was not graduated.
*445 Defendant answered, admitting:
“That he is demanding of plaintiff the payment of a license tax to the amount of two-fifths of one cent on each barrel of oil produced by it during the year 1910, and to be paid according to, and under the provisions of Act No. 196 of the General Assembly of the state of Louisiana for the year 1910.”
“Defendant further avers that said Act No. 196 of 1910 is not unconstitutional, null, and void, either under the Constitution of the state of Louisiana or the Constitution of the United States, for any of the reasons alleged in plaintiff’s petition.”
The following is the agreed statement of facts upon which the case went to trial:
“In this cause it has been agreed by the counsel representing the respective parties, the plaintiff and the defendant, that the following statement of facts shall take the place of evidence in the trial of this cause:
“The Etchison Drilling Company is a corporation under the laws of Louisiana, and is engaged in the business of drilling for oil in the parish of Caddo, and was so engaged during the year 1910.
“The tax collector has demanded, and is demanding, of the plaintiff payment of license tax under Act' No. 196 of 1910, as a prerequisite to the conduct of its business during the year 1911.
“That the value of crude oil at the mouth of the well averaged during the year 1910 40 cents per barrel, and that it is now worth 44 cents per barrel.
“That crude sulphur is now worth at the mouth of the mine $18 per ton.
“That pine timber cut into saw logs in the country was worth $5 to $7 per thousand.
“That hardwood timber cut into saw logs is worth on an average $10 per thousand.
“That stavebolts are now worth $15 per thousand.
“That piling is now worth $15.
“That telephone and telegraph poles are worth $5 arpóle.
“That crude salt is worth at the mouth of the mine from $1 to $2.
“That gas at the mouth of the well is worth 25 cents for 10,000 cubic feet.
“Or, in other words, it is admitted that the license tax levied by the act in controversy on the business of producing oil, or any other business named in the act, has no reference by comparison, the one to the other, in so far as intrinsic value is concerned.
“It is admitted that there are natural products severed from the soil in the state of Louisiana, such as cutting cross-ties, pine poles other than telegraph and telephone poles and piling, and eordwood, that do not give rise to any license tax under that act.
“That each of these various products is subject to fluctuation in price, and so does fluctuate from time to time.
“The above is agreed upon as a statement of facts. Counsel for the tax collector objected to the admissibility of the testimony as irrelevant, and same was admitted subject to the objection.”
The conservation of the natural resources of the state became an object of legislation by the General Assembly in the year 1908; when, by Act No. 144, § 2, provision was made for “the prevention of waste in the extraction of oil, gas and other minerals.” This is the first instance called to our attention where the Legislature denominated oil as a mineral. Although it has always been technically so considered, the Congress of'the United States, in the year 1897 (section 2333, Revised Statutes), passed an act classing petroleum as a mineral, in the sense of the mining laws of the United States. In the record under consideration is found “the report of the Louisiana Conservation Commission of 1910” to the Governor of this state. That commission was formed under Act No. 144 of 1908, above referred to. In this report is found the declaration of the Governors of states and territories of the United States of America, which had assembled on the request of the President of the United States. In that document we find the following:
“We recommend the enactment of laws looking to the prevention of waste in the mining and extraction of coal, oil, gas, and other minerals, with a view to their wise conservation for the use of the people, and to the protection of human life in the mines.”
In the course of the report of the commission, we find the following:
“In the outset the commission agreed that there are two kinds of resources; exhaustible and inexhaustible. Examples of the exhaustible classes are minerals like oil, gas, sulphur, salt and coal.”
And, again, under the heading “Minerals,” we find the following:
“The mineral resources of Louisiana afford a large, and for the most part, valuable and im *447 portant variety. Among those which will be hereafter mentioned in detail are oil, gas, sulphur, salt, gravel, and brick clays, all of which are being commercially used, and productive of extensive commercial operations.”
And, again, raider “Conclusions and Recommendations,” we find under the subheading “Minerals” the following:
“There should be strict laws enacted to prevent economic waste in the extraction of minerals, particularly with reference to natural gas.
Acting upon the recommendation or report of the Louisiana Conservation Commission, the General Assembly in 1910 undertook to deal with the subject of the conservation of the natural resources of this state, and adopted several acts referring thereto.
Act No. 154 is the first, and it is a joint resolution proposing an amendment to article 229 of the Constitution by striking therefrom the exemption from licenses of those who may be engaged in mining pursuits, and thus permitting the Legislature to impose license taxes upon persons who follow mining pursuits; clearly intending to include persons who produce oil, gas, and other minerals.
Act No. 172 makes appropriation to defray the expenses of the Conservation Commission.
Act No. 196 creates a conservation fund by levying, collecting, and enforcing payment of an annual license tax upon all persons, associations of persons, or business firms or corporations, pursuing the business of severing timber and minerals from the soil, etc.
Act No. 254 is “to establish a department of mining and minerals, including oil and gas production,” etc.
Act No. 261 establishes the “department of forestry,” etc.
In the proposed amendment to article 229 of the Constitution (Act No. 154) the Legislature used the following language:
Joint Resolution.
Proposing an amendment to article 229 of the Constitution of the state of Louisiana.
“Section 1. Be it resolved by the General Assembly of the state of Louisiana, two-thirds of all the members elected to each house concurring. That an amendment to the Constitution of the state of Louisiana be submitted to the qualified electors of the state for their approval or rejection, as required by article 321 of the Constitution, at the congressional election to be held on the first Tuesday next following the first Monday in November, 1910. amending and re-enacting article 229 of the Constitution of the state of Louisiana, so as to read as follows:
“Article 229. The General Assembly may levy a license tax, and in such case shall graduate the amount of such tax to be collected from the person pursuing the several trades, professions, vocations and callings. All persons, associations of persons and corporations pursuing any trade, profession, business or calling, may be rendered liable to such tax, except clerks, laborers, clergymen, school teachers, those engaged in mechanical, agricultural and horticultural pursuits, and manufacturers other than those of distilled alcoholic or malt liquors, tobacco, cigars, and cotton seed oil.
“Those engaged in the business of severing natural resources, as timber and minerals, from the soil or water, whether they thereafter convert them by manufacturing, or not, may also be rendered liable to a license tax, but in this case, the amount to be collected may either be graduated or fixed according to the quantity or value of the product at the place where it is severed.
“No political corporation shall impose a greater license tax than is imposed by the General Assembly for the state purposes. This restriction shall not apply to dealers in distilled, alcoholic or malt liquors. The General Assembly shall have authority to provide that municipalities levying license tax equal in amount to those levied by police juries for parochial purposes, shall be exempted from the payment of such parochial licenses.”
In proposing the amendment to article 229 of the Constitution, the Legislature re-enacted the whole of that article, leaving out the word “mining” in connection with those pursuits which were exempted in the original article. And it added the paragraph beginning: “Those engaged in the business of severing natural resources," etc., as set forth above.
And in Act No. 172, making appropriation to defray the expenses of the Conservation Commission, the Legislature declared the nat *449 ural resources to “include the waters, the forests and minerals,” and in section 3, providing for. the duty of the commission, declared its duty to he “the prevention of waste in the extraction of oil, gas and other minerals,” and in Act No. 196 the Legislature, in the title to the act, referred to “severing timber and minerals from the soil.” This is repeated in sections 1 and 2. Section 4 provides:
“That every mining company engaged in the state in the business of producing oil, natural gas, sulphur or salt” shall make an annual report to the Secretary of State “of the products at the mines, or wells in such form as he may require.”
And the tax collector was required to—
“demand from each company or person applying for a license a certificate from the Secretary of State, certifying to the total amount of the product mined in each parish during the preceding year by such company,” etc.
And in section 5, par. 1, it is provided:.
“That for the business of carrying on the mining and production of oil, the license shall be two-fifths of one cent on each barrel produced.”
And in section 6 it is provided:
“That the annual cutting of timber or production of minerals, referred to as a basis of license, are those for the year in which the license is granted.”
Act No. 254 is entitled:
“An act to establish a department of mining and minerals, including oil and gas production,” etc.
. Section 1 provides for the appointment of a supervisor of minerals and a deputy supervisor, “who shall be a person having practical knowledge of geology and natural gas and oil.”
Section 2 provides that the supervisor—
“shall make inspection, either in person or through the deputy supervisor, of all mining operation carried on in the state, particularly that of the production of natural gas and oil,” etc. “He shall see that all the provisions of law pertaining to mining now in force or hereafter enacted, particularly those provisions pertaining to the drilling of wells and piping and consumption of natural gas-and oil, are faithfully carried out,” etc.
In the same section is found.
“The amount of capital invested in the oil, gas and other mining industries,” etc.
From the above summary of the laws' of 1908 and 1910, all referring to the subject of minerals, gas, oil, etc., we are forced to the conclusion that the Legislature have now classified oil and gas as minerals; and those who are engaged in extracting them from the earth to be engaged in mining pursuits. Such classification is binding upon the courts. And when the Legislature proposed an amendment to article 229 of the Constitution, and caused it to be submitted to the people, which is known as Act No. 154 of 1910, it proposed to take those persons who were producing oil, gas, etc., from among those exempted by article 229. It, the General Assembly, had. apparently previously considered such producers as persons following mming pursuits, because in imposing licenses under the Constitution of 1898 it had never imposed license taxes upon producers of oil and gas. The understanding and intention of the Legislature is made even more manifest by the language, used in the additional paragraph by which article 229 was sought to be amended.’ It provides:
“Those engaged in the business of severing natural resources, as timber and minerals, from the soil or water, * * * shall be rendered liable to a license tax.”
And in the companion acts, as we have seen, the Legislature classifies oil and gas as minerals.
The amendment proposed by the General Assembly in 1910 became a law in November, 1910, when the electors of the state voted for its adoption, and the result of that election was made known by the proclamation of the. Governor.
The joint resolution of the General As *451 sembly, proposing the amendment to article 229 of the Constitution, was approved July 6, 1910. But, in accordance with article 321 of the Constitution, it did not become a part of the Constitution until November, 1910. Article 321 provides, in part, as follows:
‘■‘Propositions for the amendment of this Constitution may be made by the General Assembly at any session thereof, * * * ” to be submitted at the following congressional election “to the electors for their approval or their rejection; and if a majority voting on said amendment or amendments shall approve and ratify the same, then such amendment or amendments so approved' and ratified shall become a part of the Constitution.”
The language is clear that such amendment shall then, on the vote of the electors in the congressional election, become a part of the Constitution. The amendment under consideration therefore did not become a part of the Constitution July 6, 1910, when it was proposed to the electors by the Legislature; but it became a part thereof in November, 1910, when it was approved and ratified by the electors of the state.
[3] The amendment deals with the future exclusively. It makes no reference to the past; and it has no retroactive effect. It says the General Assembly may levy a license tax, and in such case shall graduate the amount of such tax to be collected, etc. All persons may be rendered liable to such tax, except those following certain designated pursuits:
“Those engaged in the business of severing natural resources, as timber and minerals, from the soil or water, whether they thereafter convert them by manufacture or not, may also be rendered liable to a license tax,” etc. And “the amount to be collected may either be graduated or fixed,” etc.
Cooley’s Constitutional Limitations, under “Construction of State. Constitutions,” p. 97, says:
“We shall venture also to express the opinion1 that a constitution should operate prospectively only, unless the words employed show a clear intention that it should have a retrospective effect. This is the rule in regard to statutes, and it is one of such obvious convenience and justice that it must always be adhered to in the construction of statutes, unless in1 cases where there is something on the face of the enactment putting it beyond doubt that the Legislature meant it to operate retrospectively.”
The language used in the amendment refers to the future. It admits of no other interpretation. There is nothing whatever ambiguous in its terms in this regard. It confers certain authority upon future Legislatures. It does not control, or attempt to confirm, any act of past Legislatures. We have consistently followed the rule laid down by Judge Cooley in the work just above referred to. Among the cases are Mayor, etc., v. Blackburn, 27 La. Ann. 545; City v. Vergnole, 33 La. Ann. 35; Pecot et al. v. Police Jury, 41 La. Ann. 706, 6 South. 677; State ex rel. Recorder v. Judge, 50 La. Ann. 658, 23 South. 886; Succession of William Parham and Wife, 51 La. Ann. 983, 25 South. 947, 26 South. 700; State ex rel. Hart v. City, 51 La. Ann. 914, 25 South. 951.
We have been referred to a declaration made by us in Coguenham v. Avoca Drainage District et al., 130 La. 323, 57 South. 989, where we say:
“The only question would have to be, therefore, whether such anticipatory legislation was valid. No reason is suggested why it should not be; and that legislation may be validly enacted with a view to a future amendment of the Constitution1, upon which it is to depend for its constitutionality, has been held by the Supreme Courts of Texas and Connecticut. Galveston v. Gross, 47 Tex. 428; Pratt v. Allen, 13 Conn. 119.”
The Texas and Connecticut cases cited do not answer the question propounded in the affirmative, or in the broad way in which the declaration is made by us. The Connecticut court decided that the Legislature already had the right to pass the act complained of before the Constitution was amended; and that the mere use of the words “shall be prescribed by law” in the amendment did not have the effect of annulling the law which had been passed, *453 when the Constitution had been silent on the subject. The Texas court found that the Legislature, in 1871, had approved and submitted an amendment to the people which was voted upon and adopted by the people in November, 1872. It then went back to the Legislature, and on the 19th of March, 1873, the. amendment to the Constitution was ratified by the Legislature, and became a part of the Constitution. Just one day previous, to wit, on March 18, 1873, “An act to set apart one-half of the public domain for the support and maintenance of public schools” (Laws 1873, e. 13), was adopted by the Legislature, and the court held, under these conditions, that the act of the Legislature took effect at the same time as the constitutional amendment took effect. The amendment which had been proposed in 1871 by the Legislature, and adopted by the people in 1872, and was then resubmitted to the. Legislature in 1878 and adopted, and the act which was passed by the same Legislature on the day following, was held by the court to be parts of the same legislation, and therefore legal. The court proceeded to say:
“We know of no rule forbidding legislation looking to the contingency of a constitutional change, at least when the consummation of that change rests with the Legislature alone.”
As there was some doubt in the language used in the amendment, the court resolved that doubt in favor of the constitutionality of the act.
Returning to the decision in Coguenham v. Avoca Drainage District, 130 La. 323, 57 South. 989, it will be observed that we did not basé our opinion of the validity of the act under consideration there as dependent upon a subsequent amendment of the Constitution. We say:
“At the time the tax in question in this case was levied the said amendment had already been adopted and gone into operation, and it of itself, in the absence of any legislative act, would clearly be sufficient to authorize said tax. It reads plainly to that effect. Moreover, it is to go into effect immediately, which can have no other meaning than that an enabling act is not to be necessary for it to go into effect. * * * If the nature and extent of the right conferred and of the liability imposed is fixed by the provision itself, so that these can be determined by the examination and construction of its own terms, and there is no language used indicating that the subject is referred to the Legislature for action, then the provision should be construed as self-executing, and its language as addressed to the courts” (and not to the Legislature).
The amendment to article 229 of the Constitution, not only refers to the future exclusively, but it is addressed to the Legislature, and not to the courts. Its terms are not self-operative. It requires legislative action to give it effect. There has been no session of the Legislature since the adoption of the amendment until the present time; and'there has consequently been no valid act of the Legislature passed in conformity with said amendment.
Act No. 196, under which defendant claims a license tax from plaintiff, was approved July 6, 1910, several months before the adoption of the amendment to the Constitution (article 229) in November, 1910.
It is further argued that, because of section 9 of said act, the act is saved from being unconstitutional, null, and void. Section 9 reads as follows:
“That this act shall not go into effect unless and until the proposed amendments to the Constitution of this state, amending article 229 thereof, has been adopted, which amendment is to be submitted to the people as provided by this Legislature.”
The argument is fallacious. The Legislature was prohibited by the Constitution of 1898 from passing the act in so far as it attempts to impose license taxes upon those engaged in mining pursuits; and nothing that it might do or say could relieve it from the disabilities flowing from that prohibition. The Legislature is without power to say that its invalid act may become valid upon the happening of any contingency. It *455 might have been argued that the amendment adopted by the people in November, 1910, could have validated Act No. 196; but it did not say that Act No. 196 should become valid. It did not make the act a part of the amendment. The act was not referred to in it in any way. The amendment and the act were adopted at different times and by different bodies. One was adopted by the electors of the state; and the other by the General Assembly, in its representative capacity. They are not contemporaneous; and the amendment is in no manner dependent upon Act No. 196. The Legislature sought to make Act No. 196 dependent upon the amendment, but as the amendment was not adopted, or in existence, in July, 1910, the act has nothing to depend upon for its validity, where it undertakes to impose license taxes upon those engaged in mining pursuits.
[2] We have repeatedly held statutes to be valid which depended upon the happening of some future event, or contingency, for their effect. The Legislature usually predicated the future taking effect of the acts upon questions of expediency. But in those cases the statutes complained of were not unconstitutional; that is, violative of any prohibitory article of the Constitution. Act No. 196 is, in part, in violation of article 229 of the Constitution of 1898. Those parts referring to minerals were null and void at the time of its passage. Those parts cannot be given validity and effect by the adoption of a new Constitution, or an amendment of the old Constitution. Some courts have held, and the text-writers announce, the law to be that the Legislature cannot submit an act of theirs to the popular vote to give it effect, except in cases where city charters or other similar provisions of government have been submitted for approval to the localities to be affected by them. This latter class of cases is excepted from the general rule. But we have not been referred to any case where it has been held that the a'doption of a constitutional amendment, or the adoption of an entire Constitution, has given validity and force to an act of the Legislature which was unconstitutional at the time of its adoption. It has been held that an amendment to the Constitution by its terms was retroactive in its effect; and had thus validated a law which was null and void at the time of its adoption. But such language is not contained in the amendment which we are considering.
[1] We say in Homer v. Blackburn, 27 La. Ann. 544:
“The constitutionality of the law is to be tested by the Constitution which was in force when the law was passed.”
This is in line with the law as found in 8 Cyc. p. 768:
“An unconstitutional statute is absolutely null and void ab initio, having no binding force; and cannot be validated by a subsequent constitutional amendment removing the legislative restriction by which its enactment was prohibited. Nor has a Legislature any authority to validate an unconstitutional proceeding. Validating constitutional provisions do not operate retrospectively, unless they are intended to so operate; and therefore unconstitutional legislation is not validated by the subsequent adoption of constitutional amendments or other provisions merely authorizing the enactment of such legislation and without expressing any intent to validate it.”
And this is the precise condition of the amendment with reference to Act No. 196 of 1910. It does not express any intent to validate the act. It does not refer to it.
We have considered the constitutionality of Act No. 196 under the Constitution of 1S98, although the Attorney General in his brief says:
“Pretermitting the question whether drawing oil from the earth is a mining pursuit, Act 196 of 1910 cannot possibly contravene the old article 229 of the Constitution of 1898, for the. simple reason that this act was not passed under said article 229, but solely under and with reference to Act 154 of 1910, the amendment proposed to the old article 229 of the Constitution.”
Act No. 196 of 1910 is unconstitutional, null, and void in those parts which impose *457 license taxes upon those persons engaged in mining pursuits. Those parts of the act have not been validated by the adoption of the constitutional amendment in November, 1910. And the license tax imposed upon plaintiff by Act No. 196 is unauthorized and prohibited, and cannot be collected.
[4] We are at this time considering paragraph 1 of section 5, of Act No. 196 of 1910. It provides very explicitly:
“That for the business of carrying on the mining and production of oil, the license shall be two-fifths of one cent on each barrel produced.”
In view of the language used, we are constrained to hold the production of oil to be a mining pursuit. Article 229 forbids the imposition of license taxes upon those engaged in mining pursuits. Were we free to hold that the production of oil was not a mining pursuit, and to thus disagree with the Legislature, there would have to be judgment in favor of plaintiff. There would be no law whatever imposing a license tax upon those engaged in taking oil from the earth. The Legislature has only imposed a license tax “for the business of carrying on the mining and production of oil.” If oil is not mined, no license tax has been imposed by the Legislature; and that is the only body authorized to impose licenses.
We have not considered the other causes of unconstitutionality alleged by plaintiff, as we sustain the ground first urged by it.
We have not considered section 3 of the act which imposes license taxes upon persons engaged in severing timber from the soil. We have considered only the constitutionality of Act No. 196 in so far as it imposes license taxes “for the business of carrying on the mining and production of oil,” and we find that the act was unconstitutional at the time of its adoption, or attempted adoption, and that it has not been validated by the subsequent adoption of the amendment to the Constitution, contained in Act No. 154 of 1910.
The judgment appealed from is affirmed.
See concurring opinion of LAND, J., 59 South. 872.