SAVOY, Judge.
The question presented for our determination in this concursus proceeding instituted by Humble Oil & Refining Company is whether the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College (hereinafter referred to as The Board) is included under LSA-R.S. 9:5806 so as to render mineral rights in lands acquired by The Board im-prescriptible, when such mineral rights had been previously reserved.
The following facts were stipulated: On December 30, 1948, Charles J. Freeland, Jr., sold 195.57 acres of land in Acadia Parish to The Board, reserving one-half mineral interest in the property. On July 30, 1958, and before the ten years had elapsed, Act 278 of 1958 became effective providing, in pertinent part, as follows:
“When land is acquired by conventional deed or contract, condemnation or expropriation proceedings by the State Department of Highways, the State Department of Public Works or by any of the several levee districts in the state, or by the State Department of Wildlife & Fisheries, or by a police jury, school district, school board or other board, or by any commission, heretofore or hereafter created by the State of Louisiana, from any person, firm or corporation, and by the act of acquisition, order or judgment, oil, gas or other mineral or royalties are reserved, the rights so reserved shall be imprescriptible * *
This Act was again amended in 1960 by Act 528, and is presently incorporated in the Revised Statutes as LSA-R.S. 9:5806. No drilling was had on the tract in question until October of 1964, which resulted in a producing well in January of 1965. On April 5, 1966, Humble filed this suit to have a judicial determination made of the ownership of the disputed one-half mineral interest.
The trial court, without assigning written reasons, held that Charles J. Freeland, Jr., was the owner of a one-half mineral interest in the property. From this judgment The Board has appealed, contending that Act 278 of 1958 is limited in its scope to “certain public bodies” and has no application to The Board.
In support of its position The Board relies very heavily upon the accepted rules of statutory construction in determining the true intent and purposes of our Legislature in enacting the legislation. With these accepted rules we have no quarrel; but, as was said in State of Louisiana, through Department of Highways v. Bradford, 242 La. 1095, 141 So.2d 378:
“It is a rudimentary tenet of statutory construction in this State that ‘When a law is clear and free from all ambiguity, the letter of it is not to be disregarded, under the pretext of pursuing its spirit.’ Article 13 of the Civil Code.”
LSA-Civil Code Article 14 states:
“The words of a law are generally to be understood in their most usual signification, without attending so much to the niceties of grammar rules as to the general and popular use of the words.”
Can it be seriously contended here that there is ambiguity in the wording of LSA-R.S. 9:5806 so as to exempt The Board from the statute? We think not. Surely it cannot be denied that The Board was created or established by the State as LSA-R.S. 17:1451 expressly established *691 The Board. Likewise, we feel that the wording of LSA-R.S. 9:5806, “or * * * board, or by any commission, * * is clear and applicable to The Board.
Webster’s Dictionary (1964 Edition) defines “board” as: “A table at which a council or court is held; hence, a council convened for business or any group of administrators ; as, a board of directors; a school board.” And still the 1963 Edition defines “board” as: “A group of persons having managerial, supervisory, or investigatory powers (board of directors) (school board) (board of examiners).” Also, the 1963 Edition defines “commission” as: “A group of persons directed to perform some duty”.
The Board also relies upon LSA-R.S. 17:1425 which provides:
“No legislation hereafter adopted shall be deemed to include, affect or apply to the university, its board of supervisors, officers and employees, unless such legislative intent appears from the express language of such legislation or results from necessary implication.”
In this case, when we consider the purpose of LSA-R.S. 9:5806, i. e., enabling the acquisition of land more easily by allowing the landowners to keep the minerals for an indefinite time in the future, we can readily see that the legislative intent necessarily implies inclusion of The Board. To hold otherwise might seriously hamper the acquisition of needed land, especially in light of the numerous branches of the university which are becoming more and more important in the continuing education of the people of our state.
That the Legislature intended to expand the coverage of LSA-R.S. 9:5806 in light of present day transactions may be readily seen by the amendment to the statute in 1960 so as to include any political subdivision authorized to incur debt and issue bonds under the provisions of the Constitution and statutes of the State of Louisiana. More and more agencies are obtaining the expropriation powers, and in 1958, Louisiana State University, among others, obtained this authority by virtue of the provisions of LSA-R.S. 19:141-19:160, which was the same year that LSA-R.S. 9:5806 was amended so as to include acquisitions by state agencies as well as the federal_government.
We note that Louisiana State University appealed this case without furnishing bond. LSA-R.S. 13:4581 provides:
“State, parish and municipal boards or commissions exercising public power and functions shall not be required to furnish any appeal bond; or any other bond whatsoever in any judicial proceedings instituted by or brought against them.”
Louisiana State University is not mentioned by name in the statute, but the statute, iike the one in the instant case, is broad enough to cover it.
Counsel for Freeland states that Act 278 of 1958 must be applied retrospectively. Counsel for Louisiana State University did not discuss this point in his brief; however, in oral argument before this Court, he concedes that if the Act in question is applicable, then the Act is retrospective in effect so as to apply to mineral reservations created prior to the statute and still outstanding at the time of enactment. For this reason, we have not discussed this phase of the case.
We are of the opinion that The Board was intended to be included under the provisions of LSA-R.S. 9:5806, that the one-half mineral interest reserved by Charles J. Freeland, Jr., in 1948 was rendered imprescriptible by Act 278 of 1958, and he is entitled to an undivided one-half interest in the minerals in the property in question.
For the reasons assigned, the judgment of the district court is affirmed at appellant’s costs.
Affirmed.