LANDRY, Judge.
This is an action for a declaratory judgment to determine the authority of the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College (Board) to impose fines for violation of parking regulations established by the Board for the control of vehicular traffic upon the streets and roadways of the L S U Main Campus, Baton Rouge, Louisiana. More precisely, the issue presented is whether the Board may levy a fine of $5.00 for violation of a Board adopted parking regulation governing vehicular traffic on the Baton Rouge campus, notwithstanding the provisions of LSA-R.S. 17:1803 (Act 297 of 1958) which expressly limits such fines to $1.00. The trial court held that LSA-R.S. 17:1803 is applicable to defendant Board. The Board appealed. We affirm.
In essence the Board maintains it has complete authority to run, operate and manage the affairs of Louisiana State University. This authority, according to appellant, is to be found in the provisions *430 of La.Const. Art. XII, Sec. 7, which reads in pertinent part as follows:
“Except as otherwise provided in this Section, the Louisiana State University and Agricultural and Mechanical College shall be under the direction, control, supervision, and management of a body corporate to be known as the ‘Board of Supervisors of Louisiana State University and Agricultural and Mechanical College’ * *
The thrust of the Board’s argument is that the above constitutional provision is self-operative, and since the Constitution itself has granted the Board authority to direct, control, supervise and manage the affairs of the University, the legislature cannot subsequently usurp such authority and regulate or control the daily affairs of the University as though no such grant of constitutional authority existed.
LSA-R.S. 17:1803 provides as follows:
“The fine which may be imposed for violation of any parking regulation established by the governing authority of any state supported college or university in this state, including Louisiana State University and Agricultural and Mechanical College, where the violation occurred upon the streets and roadways of such college or university, shall not exceed the sum of one dollar.”
The facts are undisputed. When this action was instituted by the Student Government Association (SGA), the Board, by proper resolution, had declared certain areas of the University campus to be “Official Areas” reserved for faculty and staff convenience during designated restrictive periods. The “Official Areas” thus designated included the central portions of the campus, the semi-circular roadway around the parade ground in front of the compa-nile, certain parking lots and other specifically described areas. The hours of restrictions imposed were from 7:00 A.M. until 4:00 P.M., Mondays through Fridays. In certain areas, both parking and operation of student owned vehicles was proscribed. In other areas, operation of student owned vehicles was allowed, but parking therein was prohibited. A penalty of $5.00 was imposed for violation of the regulations in question.
The Board’s argument completely ignores certain well established rules of statutory interpretation applicable herein.
We begin with the elementary principle that in the event of conflict between a state statute and a provision of the state constitution, the statute must yield. Fullilove v. United States Casualty Company of New York, La.App., 129 So.2d 816. A statute is presumed to be constitutional. Everhardt v. City of New Orleans, 253 La. 285, 217 So.2d 400. An act of the legislature will be held unconstitutional only when no other alternative is possible. Buras v. Orleans Parish Democratic Executive Committee, 248 La. 203, 177 So.2d 576. Any doubt as to the constitutionality of an act must be resolved in favor of its validity. Johnson v. Collector of Revenue, 246 La. 540, 165 So.2d 466. The burden of establishing the alleged unconstitutionality of a statute rests upon the party who assails it. Hamilton v. McKeithen, 254 La. 683, 226 So.2d 494.
All constitutional provisions are presumed to be self-executory. State ex rel. Curtis v. Ross, 144 La. 898, 81 So. 386.
Where a constitutional provision is merely a declaration of policy, and it is intended that the legislature shall prescribe means by which said policy shall be carried out, the provision is not self-executory. State ex rel. Noe v. Knopp, La.App., 190 So. 135.
It is noteworthy that Constitution Art. XII, Section 7, was proposed as an amendment to the Constitution as Senate Bill 126 of the Regular Session of 1940. Senate Bill 126 was passed by the Senate on June 11, 1940. In the House of Representatives, the bill was amended and adopted July 1, *431 1940. The amended bill was concurred in by the Senate on July 2, 1940, and the bill finally enrolled as Act 397 of 1940, on July 5, 1940. The constitutional amendment thus proposed was ratified by the electorate on November 5, 1940.
We note in passing that Art. XII, Section 7, of the Constitution, has been subsequently amended by Act 668 of 1968, adopted November 5, 1968. This amendment is a matter of no consequence inasmuch as it merely provides for the creation and establishment of a Louisiana Coordinating Council for Higher Education.
At its 1940 Regular Session the Legislature also passed Act 196, which was introduced as Senate Bill 380. On July 2, 1940, Senate Bill 380 was passed by the Senate. The bill was House amended and passed by the House of Representatives on July 9, 1940. The House amendments were concurred in by the Senate on July 10, 1940. Act 196 of 1940 was signed by the Governor on July 12, 1940. Act 196 of 1940 has become LSA-R.S. Title 17, Ch. 4, Secs. 1421-1474, inclusive.
Wide latitude is vested in the legislature with respect to constitutional interpretation. The courts may not interfere with the exercise of such legislative discretion unless there appears a clear violation of some restrictive provision of organic law. Union Sulphur Co. v. Parish of Calcasieu, et al., 153 La. 857, 96 So. 787.
In matters of this nature, our Supreme Court has, in Coguenham v. Avoca Drainage Dist., 130 La. 323, 57 So. 989, declared the following rules of construction both apposite and conclusive:
“It is not always easy to determine what are or what are not self-executing provisions, nor are the authorities reconcilable. Where the provision provides the rule for enforcement and fixes a penalty for violations, there can be no doubt as to its character. It is not only self-executing but prohibitive, and renders void all statutes in conflict therewith. But a provision may be both prohibitive and mandatory and not self-executing. The question in such cases is always one of intention, and to determine the intent the general rule is the courts will consider the language used, the object to be accomplished by the provision, and the surrounding circumstances, and to determine these questions from which the intention is to be gathered the court will resort to extrinsic matters when this is necessary.” 8 Cyc. pp. 753, 754.
“The question in every case is whether the language of a constitutional provision is addressed to the court or the Legislature. Does it indicate that it was intended as a present enactment, complete in itself as definitive legislation, or does it contemplate subsequent legislation to carry it into effect? This is to be determined from a consideration both of the language used and of the intrinsic nature of the provision itself. If the nature and extent of the right conferred and of the liability imposed is fixed by the provision itself so that they can be determined by the examination and construction of its own terms, and there is no language used indicating that the subject referred to the Legislature for action, then the provision should be construed as self-executing, and its language as addressed to the courts.” Willis v. Mabon, 48 Minn. [140] 150, 50 N.W. [1110] 1111, 16 L.R.A. 281, 31 Am.St. Rep. 626.
“Where it is apparent that a particular provision of the organic law shall go into effect immediately without ancillary legislation, and this can be determined by giving full force and effect to all its clauses relating to the same subject, and the language is free from ambiguity, then it becomes the imperative duty of the judicial tribunals to declare it self-executing; and where the provision is unambiguous and the purpose of the provision would be frustrated unless it be *432 given immediate effect, it will be held self-executing.” Tuttle v. National Bank of Republic, 161 Ill. [497] 502, 44 N.E. [984] 985, 34 L.R.A. 750; 6 Am. & Eng. Ene., p. 912, note 2.
“Constitutional provisions are self-executing when there is a manifest intention that they should go into immediate effect, and no ancillary legislation is necessary to the enjoyment of a right given or the enforcement of a duty imposed.” 6 Am. & Eng. Ene. p. 912.
In our view, the title and enacting clause of Act 196 of 1940 leave no doubt as to the effect the legislature intended to accord Act 397 of 1940, which became Const. Art. XII, Section 7. Said title and enacting clause read as follows:
“AN ACT
To create a governing body for the Louisiana State University and Agricultural and Mechanical College to carry into effect Section 7 of Article XII of the Constitution of Louisiana; to prescribe the powers, authority and duties of such governing body; to regulate the organization, administration and operation of Louisiana State University and Agricultural and Mechanical College; to provide that no future statute shall be deemed to affect any provision of this act unless the legislative intent thereto shall appear from express language or by necessary implication-, to repeal specifically certain laws, and to repeal all laws or parts of laws in conflict herewith.
Be it enacted by the Legislature of Louisiana, That the following comprehensive statute, which shall be known and may be cited as the ‘Louisiana State University Code,’ shall govern the selection, powers and functions of the Board of Supervisors and the organization, administration and operation of Louisiana State University and Agricultural and
Mechanical College (referred to hereinafter simply as the ‘University’) (Emphasis by the Court.)
Moreover, the Supreme Court has had occasion to interpret Act 196 of 1940, in State ex rel. Bourgeois v. Board of Supervisors of Louisiana State University and Agr. and Mech. College et al., 205 La. 177, 17 So.2d 25. In Bourgeois, above, a dismissed faculty member sought reinstatement on the ground that his discharge by the President, subsequently approved by the Board, was illegal in that the Board alone had the authority to relieve him of his position. The employee involved expressly relied on Act 196 of 1940. In sustaining the dismissal, the court in Bourgeois held that Act 196 of 1940 implements Const. Art. XII, Section 7, as approved by Constitutional Amendment adopted November 5, 1940.
When Act 196 of 1940 was incorporated into the Revised Statutes, the enacting clause thereof was paraphrased as LSA-R.S. 17:1421, which reads as follows:
“§ 1421.
The provisions of this Part shall govern the selection, powers, and functions of the board of supervisors and the organization, administration, and operation of Louisiana State University and Agricultural and Mechanical College, hereinafter referred to simply as the university.”
LSA-R.S. 17:1451 (Act 196 of 1940, Article II, Section 3) specifies in minute detail the powers and authority of the Board. It reads as follows:
“§ 1451.
The government of the university shall be intrusted to a board of supervisors who shall constitute a body corporate and have power and authority to perform all acts for the benefit of the university which are incident to bodies corporate, and which, by way of extension *433 and not of limitation, shall include: the right to receive donations, grants, subscriptions and bequests to the university, or to any school, college or division, or in trust therefor; the authority to accept grants of money or property for educational purposes from the federal government or from any other governmental agency, and to comply with any and all rules and regulations governing such grants which are not in contravention of existing law; to sue and he sued; eo recover all debts owing to the university; to receive all moneys appropriated to the university under the constitution or laws of the state; to borrow money and issue notes, bonds or certificates of indebtedness for the same and pledge fees, rents and revenues to guarantee payment thereof, in accordance with the statutory law on this subject; to invest the permanent funds of the university; to determine what fees shall be paid by students; to purchase any ground and purchase or erect any buildings or improvement thereon and to purchase any equipment necessary for the use of the university, subject to the other provisions of this Sub-part; to lease the lands or other property of the university in accordance with the statutory law on this subject; to sell or exchange any land or other property not needed for university purposes; to employ, fix the salaries and prescribe the duties of a president, professors and other officers and employees needed to carry on the work of the university; to formulate the courses of study; to adopt and alter all rules and regulations which may be deemed necessary or proper for the government of the university and for promoting the purposes for which it has been founded; to adopt and alter rules and regulations for the government and discipline of students; to affiliate with any institution giving any special course of instruction, upon such terms as may be deemed expedient, and which terms may include the retention by such institution of the control of its property, faculty and staff; and to award certificates, confer degrees and issue diplomas certifying the same, subject to the other provisions of this act.”
The duties of the Board are particularized in LSA-R.S. 17:1452 (Act 196 of 1940, Article II, Section 4). The remaining sections of Title 17, Chapter 4, set forth detailed regulations concerning the Board’s composition, its manner of operation, the terms and methods of appointment of its members, compensation of Board members, the appointment and salary of a president, faculty classification, the awarding of degrees, and numerous other aspects of the operation of the university.
The fact that Act 196 of 1940 was enacted at the same legislative session as Act 397 of 1940, and finally passed subsequent to the final passage of Act 397, is unmistakable evidence that Act 196 was enacted in anticipation of popular approval of the constitutional amendment proposed by Act 397. The inescapable conclusion follows that Const. Art. XII, Section 7, was not intended to be self-executory, and that Act 196 of 1940 was intended to supplement and implement Article XII, Section 7, in the event the constitutional provision subsequently became part of our basic law. Subject constitutional provision is most general in scope. It is completely silent as regards the duties, functions and authority of the Board it creates. Its sole attention to detail is that .it fixes the composition of the Board and the terms of the Board members. It does not mention or prescribe the Board’s powers or authority. Neither does it mention the numerous aspects of the Board’s functions which are treated in minute detail in Act 196 of 1940. It is also significant that Act 196 of 1940 stylizes itself as a “comprehensive statute which * * * shall govern the selection, powers and functions of the Board of Supervisors and the organization, administration and operation of Louisiana State *434 University." (Emphasis by the Court.) We believe the legislature could not have more clearly manifest intent to retain control of the Board. The cited language also makes it clear beyond doubt that Const. Art. XII, Section 7, was regarded by the legislature as lacking self-executory application and power. Any other conclusion would make the cited language in the enacting clause of Act 196 totally meaningless and superfluous. To adopt the Board’s argument is to hold that the silence of the constitutional provision regarding the vital issues of the Board’s powers, authority and duties vests in the Board such powers as it shall see fit to assume, free of legislative restraint and control. Such a result cannot be judicially sanctioned in the absence of clear and unmistakable legislative intent to create an agency devoid of legislative control. In this instance, an entirely different legislative intent is manifest by the plain terms of Act 196 of 1940, which supplements and implements the constitutional provision with which we are herein concerned. It is established law that if a constitutional provision is incomplete in itself and contemplates supplemental and enabling legislation, it is not self-executory. Moosa v. Abdalla, 248 La. 344, 178 So.2d 273. We find that the constitutional provision in question is not self-executory; that it is limited to the creation of an agency whose rights, powers and duties are to be prescribed by the legislature. We also find that the legislature has expressly reserved to itself the authority to control and regulate the Board’s authority pursuant to Act 196 of 1940 (LSA-R.S. Title 17, Ch. 4, Sections 1421-1491, inclusive).
We believe our conclusions are supported by LSA-R.S. 17:1425 (Act 196 of 1940, Article IV, Section 22), which expressly provides:
“§ 1425.
No legislation hereafter adopted shall be deemed to include, affect or apply to the university, its board of supervisors, officers and employees, unless such legislative intent appears from the express language of such legislation or results from necessary implication.”
It is worthy of note that Section 22, above, incorporates into the body of Act 196 of 1940, the emphasized portion of the title of Act 196, as hereinabove set forth. Beyond question, Section 22, above, reserves to the legislature the right to affect the power and authority of the Board by future legislation, subject only to the limitations contained in Section 22 itself. There can be no question but that the legislature intended the statute under attack to apply to defendant Board. The law involved expressly names the Board.
We are further fortified in our conclusions by the decision in Humble Oil & Refining Company v. Freeland, La.App., 216 So.2d 689. In Humble Oil, above, LSA-R.S. 9:5806, dealing with the imprescripta-bility of mineral rights on private lands acquired by public bodies, was held applicable to property acquired by defendant Board.
Appellant also relies on an opinion of the State Attorney General issued April 3, 1970, which, in substance, rules that the levy of a fine in excess of $1.00 by the Board does not constitute a violation of LSA-R.S. 17:1803. The opinions of the Attorney General are merely persuasive, not controlling. Branton v. Parker, La.App., 233 So.2d 278.
The judgment of the trial court is affirmed. Defendant Board is cast for such costs of these proceedings as said Board may be liable under existing laws.
Affirmed.