17 So.2d 25

**STATE ex rel. BOURGEOIS v. BOARD OF SUP'RS OF LOUISIANA STATE UNIVERSITY AND AGRICULTURAL AND MECHANICAL COLLEGE et al.**

No. 36998.

Feb. 7, 1944.

Kemble K. Kennedy, of Baton Rouge, for plaintiff and appellant.

Benj. B. Taylor, of Baton Rouge, for respondents and appellees.

PONDER, Justice.

The relator, Eugene O. Bourgeois, brought mandamus proceedings against the respondents, Board of Supervisors of Louisiana State University and Agricultural and Mechanical College, hereinafter referred to as the University, and the president and secretary of the University, as individuals, seeking to compel them to reinstate him as assistant professor of romance languages in the University and to recover $2,540 with legal interest for salary which he claims is due him for the academic year 1941-1942. Exceptions of no cause and no right of action and a plea of estoppel were interposed by the respondents. The respondents answered the proceedings, reserving their rights under the exceptions and plea. Reserving his rulings on the exceptions and plea, the trial judge ordered trial on the merits. After hearing the merits, the trial court denied the plea of estoppel, sustained the exceptions, recalled the alternative writs of mandamus and gave judgment rejecting the relator's demands. The relator has appealed.

It appears from the record that the relator was appointed on the faculty of the University in August, 1926 as an instructor of French and remained in its employ from that date until June 28, 1941, at which time he was appointed and employed as assistant professor of French, at a salary of $2,700 for the academic year 1941–1942 for an indefinite tenure. He assumed his duties on September 8, 1941. On September 23, 1941, the president of the University notified the relator that he was discharged for conduct unbecoming a professor according to commonly accepted standards in universities and colleges.

The record discloses that on September 9, 1941, complaint was made to a member of the faculty of the University that, on that date, the relator had committed acts unbecoming a professor of the University. On September 11, 1941, certain members of the faculty of the University investigated the complaint and informed the relator of such. On September 13, 1941, the relator appeared at a hearing before a faculty committee of the University, appointed by the president, and was present-

ed with the written charges preferred against him. At this hearing, the relator admitted the truth of the charges and stated that he desired to offer no testimony. On September 15, 1941, the president of the University called the relator into his office and apprised him that the faculty committee had decided that the charges were of such gravity that the relator should be discharged. The relator was granted the privilege of resigning any time prior to September 20, 1941. On September 19, 1941, the relator wrote the president of the University to the effect that he would not resign and asked for a reconsideration of the matter. On September 23, 1941, the relator was notified in writing by the president of the University that he was discharged. In this letter, the president stated that he had made further investigation of the case, and that the proof tendered at the hearing showed conduct unbecoming in a professor according to the commonly accepted standards in universities and colleges. At the meeting of the Board of Supervisors of the University of November 1–4, 1941, the action of the president of the University, discharging the relator, was ratified. The relator was notified in writing of this fact on March 31, 1942.

The record shows that the relator made complaint of his discharge to the American Association of University Professors and to the Southern Association of Secondary Schools and Colleges, and that there was some correspondence carried on with respect thereto, which the lower court would not admit. The record does not contain this correspondence, and it is not attached to any bill of exception. There is no contention made that these associations had any jurisdiction over the matter involved in this suit. The board of supervisors reaffirmed its action, ratifying the dismissal of the relator, at its meeting May 30–31, 1942, after all this correspondence had transpired.

These proceedings were tried on the merits, the trial court having reserved its rulings on the plea of estoppel and the exceptions. However, after a hearing of the merits, the plea of estoppel was denied, the exceptions were sustained and judgment was rendered on the merits, rejecting the relator's demands. The plea of estoppel depends on the merits for the reason that it was not separately heard. The exceptions and the merits present the same issues. Under such circumstances, we prefer to rest our decision on the merits of the cause.

The relator contends that his discharge by the president of the University was illegal, and that the board of supervisors had no authority to ratify this illegal act of the president. He takes the position that only the board of supervisors had the legal authority to discharge him. In support of his contention, he relies on Act No. 196 of 1940, known as the Louisiana State University Code, and the following provision in section (d) of the tenure regulations adopted by the board of supervisors of the University:

"The Board of Supervisors shall have the final authority for the promotion, appointment, demotion, or removal of any member of the teaching staff."

The respondents take the position that mandamus cannot be invoked to enforce the specific performance of a contract. The respondents take the further position that, the relator having been discharged after a hearing had in conformity with the tenure regulations, this Court cannot inquire as to the sufficiency of the evidence adduced at the hearing or the wisdom of discharging the relator, as it would permit the Court to substitute its judgment for that of the faculty committee, the president and board of supervisors of the University.

Under the provisions of Article XII, sec. 7, of the Constitution of Louisiana, as amended by Act No. 397 of 1940, adopted November 5, 1940, the board of supervisors is given the direction, control, supervision and management of the University.

Under Act No. 196 of 1940, enacted to carry out the effect of the aforementioned constitutional provision, the board of supervisors is constituted a body corporate with the power and authority to perform all acts incident to bodies corporate. Article II, sec. 3. This Act provides that, in addition to the other duties imposed by law, it shall be the duty of the board of supervisors, as soon as practicable, to adopt rules and regulations which may provide for the organization of the general faculty of the University and for the organization of a faculty in each college or school in the University, with deliberative and legislative functions, charged with the determination of the educational policies of each college or school. The Act provides that the board of supervisors shall adopt as soon as practicable rules and regulations which

may provide for the tenure of members of the faculty. Article II, sec. 4, (b) (1) (3). Under the provisions of Article III, sec. 15, "There shall be a president of the University who shall be the executive head of the University in all its divisions. Except as herein otherwise provided, the president shall be responsible to the Board of Supervisors for the conduct of the University in all of its affairs, and shall execute and enforce all of the decisions, orders, rules and regulations of the Board with respect to the conduct of the University. The president shall be appointed by, and shall hold office at the pleasure of, the Board. His salary shall be fixed by, and recorded in the proceedings of, the Board."

The tenure regulations, adopted by the board of supervisors at its meeting on January 13–14, 1941, are as follows:

"Regulations of the Board of Supervisors on the Subject Matter of Tenure

"a. The President of the University, all major administrative officers, the deans of the several schools and colleges, the heads of divisions and departments, as such, but not in their capacity as instructional members of a faculty, shall hold office at the pleasure of the Board of Supervisors. The tenure of all those who rank as full professors or as associate professors shall be of indeterminate duration, except that the initial appointment of a professor or an associate professor may be for a stipulated term. At the expiration of this term, if the professor or associate professor be reappointed, the appointment shall be of indeterminate duration. The tenure of as-

sistant professors shall be for a stipulated term of no longer than three years' duration. Notice of intention not to renew an appointment as assistant professor should be given a year prior to the expiration of the appointment. Instructors shall be on annual appointment and at least three months' notice must be given before the end of any fiscal year of intention not to renew an appointment as instructor. The foregoing provisions shall not be construed to invalidate contracts made between the University and faculty members on any mutually acceptable terms. The provisions of tenure shall apply only to full-time members of any faculty of the University. Tenure may be terminated by: (1) honorable retirement; (2) acceptance of resignation; or (3) discharge for cause.

"b. The term of the appointment to the faculty of each member of professorial and instructional rank shall be stated in writing and shall be in the possession both of the individual concerned and of the University.

"c. Cause for discharge shall consist of conduct seriously prejudicial to the University through deliberate infraction of law or commonly accepted standards of morality, failure to cooperate, neglect of duty, inefficiency or incompetence. The foregoing enumeration of causes for discharge shall not be deemed exclusive, and members of the faculty and staff may be discharged for other causes.

"d. Before the termination of a contract, dismissal, or demotion in academic rank of any member of the faculty during a period covered by an existing contract, he shall be entitled to have the charges against him stated in writing, to have a fair hearing before a special committee of the faculty appointed by the President or of the Board of Supervisors at the option of the Board of Supervisors. The Board of Supervisors shall have the final authority for the promotion, appointment, demotion, or removal of any member of the teaching staff.

"e. The termination of indeterminate appointments because of financial exigencies in the University shall be within the power of the Board of Supervisors, but this prerogative shall not be used except as a last resort."

From our appreciation of the brief filed and arguments advanced by counsel, the relator does not question the broad powers granted the board of supervisors nor the authority of the faculty committee to hold a hearing and recommend his dismissal. It appears that his complaint is levelled at the authority of the president to discharge him, which authority he claims is only vested in the board of supervisors. The relator is under the impression that the president did not have the legal authority to discharge him, and that the board of supervisors could not ratify the alleged illegal act of the president.

 Under the provisions of Article III, sec. 15, of Act No. 196 of 1940, the president is the executive head of the University with the authority to conduct all of its affairs, being responsible only to the board of supervisors. However, this section of the Act does make it the duty of the president to enforce any action taken by the board of supervisors. As we take it,

the president has the authority to conduct all of the affairs of the University subject to the following limitations: (1) He is responsible to the board of supervisors as to the manner in which he handles the affairs of the University, or, in other words, his actions are reviewable by the board of supervisors; (2) he is required to execute any action taken by the board. Since the president's action complained of does not conflict with the limitations contained in this section of the Act, the president was undoubtedly vested with authority to discharge the relator, after a hearing had been had, and a decision made in conformity with the tenure regulations adopted by the board. The board of supervisors had the authority, if it saw fit, to review this action of the president.

▮ The board of supervisors is only required to meet four times a year. This, in our opinion, clearly contemplates that the president should handle the affairs of the University generally, and the board of supervisors should supervise, set aside or confirm any action taken by the president.

Under the tenure regulations, the president was invested with the authority to appoint the faculty committee before whom the hearing was conducted. The board of supervisors had the option of appointing the faculty committee, if it saw fit to do so, but no such action was taken by the board of supervisors.

Various causes are set out in the tenure regulations for the discharge of a faculty member with the provision that the enumerated causes for discharge are not ex-clusive, and that members of the faculty and staff may be discharged for other causes. This gives the authorities of the University a wide latitude in determining whether it is to the best interest of the University to discharge a member of the faculty.

▮ The tenure regulations provide that the final authority for the removal of a member of the teaching staff is invested in the board of supervisors. This merely goes to the effect that the board of supervisors has the authority to review, set aside or confirm any action discharging a member of the teaching staff. "Final Authority" contemplates the exercise of some prior authority.

▮ While the tenure regulations do not specifically state that the authority to discharge a member of the faculty is vested in the president, yet from a reading of these regulations as a whole, they evidently contemplate that this authority is primarily invested in the president. Before a dismissal, the faculty member is entitled to a hearing before a faculty committee appointed by the president to act as a fact finding body. The president has the primary authority to act under the general powers invested in him, subject to any final action that might be taken by the board of supervisors.

The trial court arrived at the conclusion that the acts of the relator were of sufficient gravity to warrant his discharge as shown by its written reasons. It is unnecessary for the purpose of this decision

for us to go into a detailed analysis of the facts. The relator was given the hearing provided for in the tenure regulations and discharged.

The faculty committee, after a hearing, arrived at the conclusion that the acts of the relator were of sufficient gravity that he should be discharged. The president, acting upon the recommendations of this committee, discharged the relator, and his action was ratified by the board of supervisors.

We have no right to substitute our judgment for that of the authorities of the University, especially since there is no contention that the authorities of the University discriminated arbitrarily against the relator or acted in a capricious manner. Whether the University's judgment was exercised wisely or unwisely is not for us to decide. State ex rel. Cotonio v. Louisiana Bar Ass'n, 111 La. 967, 36 So. 50; State ex rel. Thoman v. State Board of Certified Public Accountants, 172 La. 261, 262, 134 So. 85; Walsh v. New Orleans Cotton Exchange, 188 La. 338, 177 So. 68; also see, Switchmen's Union of North America v. National Mediation Board, 320 U.S. 297, 64 S.Ct. 95.

In view of the conclusions we have reached, no purpose could be gained by a discussion of the other contentions advanced in this cause.

For the reasons assigned, the judgment of the trial court, rejecting the relator's demands and recalling the alternative writs of mandamus, is affirmed at appellant's cost.