136 So.2d 809 (1961)
Louise SINGLETON
v.
IBERVILLE PARISH SCHOOL BOARD.
No. 5448.
Court of Appeal of Louisiana, First Circuit.
December 27, 1961.
Rehearing Denied February 6, 1962.
Certiorari Denied March 16, 1962.
*810 Johnnie A. Jones, Baton Rouge, for appellant.
Samuel Cashio, Dist. Atty., Maringouin, Chas. H. Dameron, Asst. Dist. Atty., Port Allen, for appellee.
Before ELLIS and HERGET, JJ., and MILLER, J. pro tem.
MILLER, Judge pro tem.
This is an appeal from the decision of the trial court sustaining the dismissal by the school board of the appellant, Louise Singleton, (a teacher entitled to the benefits and protection of the teachers' tenure law) for alleged incompetence. Appellant was dismissed following a public hearing before the Iberville Parish School Board on May 14, 1957. By registered mail, dated April 24, 1957, appellant was notified that she was formally charged with 28 counts of incompetency. The charges were signed by L. J. Hoffman, Parish Superintendent, and attached to the letter of notification. The charges, notification and transcript of the public hearing held by the school board form a part of the record, and appellant does not complain of any irregularity or informality with regard to the proceedings before the school board.
Some of the charges are general in their nature and some are duplicative and overlapping to a degree. However, appellant did not seek to have any of the charges particularized, nor did she ask to have the redundant charges stricken. In substance the charges allege that appellant fails to maintain proper discipline and decorum in her classroom; she is unable to control her temper and restrain her voice to well modulated tones to the detriment of teacher-pupil relationship; she lacks the ability and desire to maintain an attractive classroom arranged to further the best interest of the pupils; she is incapable of properly planning lessons and utilizing modern teaching aids to best advantage; she is deficient in grammar, spelling, punctuation and general knowledge to such an extent that she cannot properly impart knowledge to her students on these subjects; she failed to qualify for waiver of practice teaching as provided for by State Board of Education Resolution of April 11, 1949; she fosters a spirit of fear and animosity on the part of her pupils to such a degree as to cause them to lose their respect for her authority; she allowed herself to become so overweight as to seriously impede her functions as a teacher; and she does not protect school property.
The facts controlling this case, as found by the district judge and amply supported by the evidence are as follows:
"* * * plaintiff, a third grade teacher in a negro elementary school of Iberville Parish, was employed by defendant school board in or about 1943, at which time she did not have a college degree and was not a fully accredited teacher. Plaintiff had three years experience in teaching prior to her employment by defendant and following said employment she continued her studies toward a degree in education and ultimately received a B. A. Degree in Education from Southern University in January, 1958, following her dismissal by defendant school board. At the time of her discharge in May, 1957, plaintiff was approximately 48 years of age. Although plaintiff's exact height and weight are not shown in the record the court, predicated upon personal observation of plaintiff in the courtroom and pictures of plaintiff introduced during the trial, the court is of the opinion plaintiff is approximately five (5') feet three (3") inches in height *811 and weighs in excess of three hundred (300) pounds. Upon plaintiff's graduation from Southern University subsequent to her discharge she was issued a Type A teacher's certificate (valid for life for continuous service) by the State Department of Education on March 3, 1958.
"Mr. Sam A. Distefano, Supervisor of Schools, Iberville Parish, for two years preceding plaintiff's discharge and prior thereto Visiting Teacher for a period of eleven years, testified that as visiting teacher he made many visits to plaintiff's classroom in the interest of pupil attendance on which occasions he observed many glaring examples of inefficiency and incompetence but made no report thereon to the school board because as visiting teacher he was concerned only with student attendance and not teacher efficiency. Upon his promotion to Supervisor he received complaints from principals regarding plaintiff's ability and efficiency and predicated upon said complaints and his own past observations while serving as visiting teacher, he decided to investigate the matter of plaintiff's competency. Accordingly, Distefano made numerous personal visits to plaintiff's classroom (some lasting only five or ten minutes and some of one hour or more duration) in order to make first hand observation of plaintiff's technique as a teacher. In the course of these visits he noted an almost complete lack of discipline in plaintiff's classes with the pupils being permitted to walk around the room at will without protest or correction on the part of plaintiff. He observed that students who talked without permission were not reprimanded and whatever instructions plaintiff gave she uttered in a harsh tone of voice indicating an obvious lack of diplomacy and an evident air of aggravation toward the students. Her voice and attitude frequently exhibited a feeling of irritation, displeasure and impatience toward the pupils in that she shouted instructions and ordered them about. Her general demeanor was such that she demanded rather than earned the respect of her pupils with the result they appeared to fear and dread rather than respect her. Opportunities for cheating on examination were given her pupils by improper seating arrangements which placed desks so close together as to readily permit one student to look at his neighbor's examination paper and prohibit plaintiff from circulating about among the students to eliminate cheating. Not only did plaintiff provide opportunity for cheating she permitted cheating in her presence to proceed unchecked, allowed students to correct their own examination papers and retain test papers over the recess period in which interval students were afforded the opportunity to obtain answers to examination questions from classmates. Generally plaintiff seated her pupils in a `U' shaped arrangement with the open end of the `U' facing the blackboard thus leaving a large unused area in the center of the room. This arrangement necessitated approximately one-third of the class directly facing the windows in the room and being exposed to the glare therefrom throughout the day. Because of this arrangement a large portion of the class was seated at right angles to the black board instead of the entire class being seated so that all would face directly toward the wall on which the blackboard was situated. In observing plaintiff in the conduct of her classes Mr. Distefano noted many mistakes in her grammar and in her pronunciation. He observed a lack of knowledge on her own part as well as inadequate planning and coordination of instruction and noted her poor technique in correlating examples for purposes of illustration. During warm weather plaintiff constantly employed one hand in fanning herself in an attempt to remain comfortable which action impeded her speech and disturbed her class.
"Mr. L. G. Hoffman, Superintendent of Schools since 1953, testified he filed the charges of incompetency against plaintiff on the recommendation of his staff following numerous complaints about plaintiff from parents of students in plaintiff's *812 class and principals of schools in which plaintiff taught. On inspection trips made in connection with his duties as superintendent he personally observed occasions on which plaintiff failed to maintain proper discipline and order in her classroom. Hoffman personally reminded plaintiff of her shortcomings and afforded her opportunities for improvement before recommending her dismissal to the school board. His testimony shows he received reports plaintiff slept during class and used her personally owned record player to furnish music for the amusement of the children while she dozed and slept in the classroom. According to Hoffman he personally transferred plaintiff from one school to another hoping she would improve and he could find find a place where she would render satisfactory service. Because of plaintiff's persistent indifference he was unable to find a suitable place for her. Before filing the charges in question he offered (because of plaintiff's long service) to assist plaintiff in applying for a disability retirement in lieu of her dismissal which offer plaintiff declined.
"Alexander Carter Jr., principal of the school at which plaintiff taught from August, 1956, until her discharge in May, 1957, testified that plaintiff often spoke to her students in a loud disturbing voice and, because of her size and obesity, she was unable to move about among her pupils in such manner as to give them the individual attention normally required. He conceded one of plaintiff's pupils had won a spelling contest but further stated some students will learn despite their teacher's incompetence. In this connection it is desired to point out that plaintiff was dismissed approximately two weeks preceding the end of the school year and based upon final examinations given by plaintifs replacement more than one half of the class failed to attain promotion.
"Dr. Joseph P. McKelphin, Director of Teacher Training, Southern University, called as a witness, testified that pursuant to a resolution adopted by the State Board of Education April 11, 1949, requiring all teachers with five years experience to take student teaching training unless exempt therefrom upon recommendation of the dean of the college of education and the state supervisor of teaching education and certification, plaintiff made application to the appropriate authority at Southern University for such exemption and in consequence thereof he observed plaintiff's teaching on January 22, 1957. Predicated upon this observation he declined to exempt plaintiff from the otherwise required student teaching training.
"Plaintiff herself testified and in substance denied the charges of incompetency lodged against her. She specifically denied failing to maintain order in her classroom and asserted she purchased many teaching aids with her own funds. She placed particular emphasis upon her purchase of a record player to teach the children music appreciation and stated she took her classes on numerous tours of places of interest among which she listed the State Capitol at Baton Rouge, Louisiana. Plaintiff denied that any of her superiors ever complained to her concerning her work and vigorously denied she was incapacitated because of her corpulence. She conceded that Mr."Hoffman and Mr. Distefano suggested she apply for disability retirement but explained that she refused to take this advice as she did not consider herself disabled and had no desire to submit a false claim of disability to obtain a pension.
"Sarah Mack, Supervisor of student teaching, College of Education, Southern University, testified she observed plaintiffs student teaching ability on three occasions between September, 1957, and January, 1958, at which time plaintiff was completing her undergraduate work at the university. Based on this observation alone she stated she would recommend plaintiff as being capable and efficient. She conceded, however, that to impart knowledge one must possess it and in addition be able to speak, spell, write and punctuate correctly. Being presented with certain letters written by *813 plaintiff to defendant school board she acknowledged the documents could be improved as to spelling, grammar and punctuation.
"Myrtle D. McLeod, Supervising Teacher, First Grade Laboratory School, Southern University, testified that in her aforesaid supervisory capacity she made daily observation of plaintiff from September, 1957, until January, 1958, and based on said contract considered plaintiff above average. She awarded plaintiff a grade of `B' for the course.
"Betty W. Edwards and Hilda Holloman, housewives, testified in effect that each had a child or children in plaintiff's class during the 1956-1957 school term and although their respective children were among those students who did not merit promotion, neither witness attributed the failure of her child or children to the incompetency of plaintiff."
Based upon substantially the same evidence, the school board, at the close of its hearing, adopted a resolution sustaining the charges of incompetency and ordering the immediate discharge of appellant from her position as a teacher in the public school system of Iberville Parish.
In this court, appellant's first position is that the Iberville Parish School Board dismissed her because she failed to qualify under the State Board of Education Resolution of April 11, 1949, which resolution permits the waiver of student teaching for those teachers who have had 5 or more years of successful full time teaching at the grade levels, provided that such teachers can obtain the proper recommendations from the Dean of the College of Education and the State Supervisor of Teacher Education and Certification. We find no merit in this argument. That appellant was unable to qualify for the exemption provided for in State Board of Education Resolution of April 11, 1949 is the basis for only one charge of incompetency. However, the decision of the school board to dismiss plaintiff is not based solely on her failure to so qualify. We are not required to decide and consequently give no opinion as to whether such admitted charge, standing alone, would be sufficient cause for appellant's dismissal. The fact that appellant was unable to qualify for the waiver is certainly an additional factor to be considered in determining her general competency or incompetency as a school teacher and this is all that the school board did.
Appellant's second position is that the action of the School Board in dismissing her was unreasonable, arbitrary, capricious and violative of the law and the evidence applicable to the hearing. In support of this contention, counsel for appellant relies on the holdings of Kennington v. Red River Parish School Board, La.App., 200 So. 514, and Andrews v. Union Parish School Board, La.App., 184 So. 574. In the Kennington case the Court found that plaintiff, Kennington was dismissed because of a personal grudge between plaintiff's husband and a member of the school board. We agree with the Court's ruling that the so called teachers' tenure law, and more specifically LSA-R.S. 17:443, prohibits the school boards from exercising the discretionary powers they once had to discharge a teacher at will or for political reasons. However, this holding has no application or even remote connection with the present case, where appellant was found guilty of several charges of incompetency by the school board, after due and legal hearing. Likewise the Andrews case, supra, is inapposite to the present case. The Andrews case involved the dismissal of a probationary teacher without assigning any reasons, weak or strong, for such dismissal. There is no contention made in the present case that appellant was not notified of the reasons for her dismissal.
The remaining question presented for our consideration concerns the reasonableness of the defendant school board's action in dismissing appellant on their finding of incompetency. Was this finding *814 arbitrary? We think not. The parish school boards, through their respective parish superintendents, are charged with the duty of exerting their best endeavors in promoting the cause of public education. LSA-R.S. 17:91. Certainly the cause of public education demands competent teachers. This fact is recognized by the legislature since proven incompetency is a stated cause for dismissal of a permanent teacher. LSA-R.S. 17:443. Should the school board be aware of the incompetency of a teacher employed in its school system and fail to institute proper dismissal proceedings, it would then be derelict in its duty. The parish school board has the authority and obligation then of determining the competency or incompetency of the teachers employed in its school system, and we should not reverse the decision of the Iberville Parish School Board and the learned trial judge unless this court is convinced that the finding of incompetency is clearly contrary to the evidence. In reviewing the action of the defendant school board, we are bound by the rule of law set forth in Lewing v. DeSoto Parish School Board, 238 La. 43, 113 So.2d 462, 466, that:
"`* * * When there is a rational basis for an administrative board's discretionary determinations which are supported by substantial evidence insofar as factually required, the court has no right to substitute its judgment for the administrative board's or to interfere with the latter's bona fide exercise of its discretion. Southern Bell Tel. & Tel. Co. v. Louisiana Pub. Serv. Comm., 232 La. 446, 94 So.2d 431; Young v. Charity Hospital, 226 La. 708, 77 So.2d 13; State ex rel. Rathe v. Jefferson Parish School Bd., 206 La. 317, 19 So. 2d 153; State ex rel. Bourgeois v. Board of Supervisors, etc., 205 La. 177, 17 So.2d 25; State ex rel. Carter v. Louisiana State Board of Dentistry, La.App., 1 Cir., 90 So.2d 899.' Chantlin v. Acadia Parish School Board, La. App., 100 So.2d 908, 910, certiorari denied."
The testimony adduced at the school board hearing and at the trial of this cause convinces us that the board's action in dismissing appellant was reasonable and proper. The evidence demonstrates that appellant was lax, indifferent and inefficient in performing the normal duties required of a competent teacher. She either would not or could not maintain discipline in her classes. She consistently ignored the many opportunities afforded her for self improvement prior to the lodging of charges against her. Her letters to the school board demonstrated her lack of education in such essentials as spelling, grammar and punctuation.
For these reasons, the judgment of the trial court is affirmed.