264 So.2d 916

STUDENT GOVERNMENT ASSOCIATION OF LOUISIANA STATE UNIVERSITY AND AGRICULTURAL AND MECHANICAL COLLEGE, MAIN CAMPUS, BATON ROUGE, Louisiana, Plaintiff-Appellee-Respondent,

v.

The BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND AGRICULTURAL AND MECHANICAL COLLEGE et al., Defendants-Appellants-Relators.

No. 51778.

June 29, 1972.

Dissenting Opinion July 6, 1972.

Taylor, Porter, Brooks & Phillips, B. B. Taylor, Jr., Baton Rouge, for defendants-relators.

Kennon & Callihan, Woodson T. Callihan, Jr., Baton Rouge, for plaintiff-respondent.

TATE, Justice.

This is an action for a declaratory judgment. The Student Government Association ("SGA") of the Louisiana State University's Baton Rouge campus prays that La.R.S. 17:1803, providing for a maximum parking fine of $1.00, be recognized as applying to L.S.U. and as thus overriding a university regulation providing for a parking fine of $5.00 in certain instances.

The district court and the court of appeal held that the statute did not infringe upon the constitutional authority of the de-

fendant Board of Supervisors to administer the university. 251 So.2d 428 (La. App.1st Cir. 1971). We granted certiorari, 259 La. 875, 253 So.2d 213 (1971), to review the broad holding of the intermediate court that Art. XII, Sec. 7, Louisiana Constitution, was not self-executing and that, therefore, its provision for supervision and control of the university by its Board of Supervisors contemplated and permitted supplemental legislation, such as that provided by La.R.S. 17:1803, here attacked.

## The Narrow Issue for Decision

As we view this litigation, the particular issue before us is considerably narrower than those issues argued and those decided by the previous courts. The issue before us is only whether the statute attacked infringes upon the power given the university governing board by the state constitution to administer the relationships and activities of the university's students *in their capacity as students on the university campus.*[1] We hold that the statute does so infringe and that it is therefore unconstitutional.

The issue before us is set in this context:

Since 1940, the Louisiana constitution has provided that Louisiana State University "shall be under the direction, control, supervision and management" of its Board. of Supervisors. La.Constitution, Article XII, Section 7. In 1958, the Legislature provided that: "The fine which may be imposed for violation of any parking regulation established by the governing authority of any state supported college or university in this state, including Louisiana State University and Agricultural and Mechanical College, where the violation occurred upon the streets and roadways of such college or university, shall not exceed the sum of one dollar." La.R.S. 17:1803, as added by Act 297 of 1958.

The issue, then, is whether such attempted statutory restriction upon the power of the governing authority of L.S.U., the defendant Board of Supervisors, to impose administrative penalties for violation of parking regulations is unconstitutional insofar as being contrary to administrative regulations adopted by that Board which provided for penalties in excess of $1.00 for improper student parking.

The governing authorities of the university adopted certain "Traffic and Parking Regulations". They provide for penalties, including, for certain violations, a "fine" or penalty of $5.00 for student parking in

---

1. Thus we do not believe before us, for instance, is the issue of the legislature's right to exercise the police power with regard to crimes occurring on the university campus.

restricted area.[2] The regulations provide for administrative enforcement of the penalties for parking violations by "fines" payable at the Bursar's office. The sanction for non-payment before the end of a semester is that the student will not be allowed to re-register nor to secure a transcript of credits until he has paid the sum due.

The Student Government Association (SGA) is composed of all fulltime students at the Baton Rouge campus of the University. By this action, the SGA prays for a declaratory judgment declaring the provisions of La.R.S. 17:1803 binding upon the Board of Supervisors and its employees and agents; and it further prays that the defendant Board and the defendant university officials shall hereafter be prohibited from imposing fines of more than $1.00 for the violation of any parking regulation.

The cause of action of the SGA is essentially based upon the detriment, injury and disadvantage caused to its student members by these parking regulations and collection of the fines. The issue before us thus concerns solely the right of the Board of Supervisors to penalize students for violation of administrative regulations adopted by the Board.

We view as before us, therefore, solely the question of whether the legislature may provide for administrative penalties contrary to (greater than or less than) those affecting students duly adopted under authority of the University's Board of Supervisors.

### Intent of Section 7.

As amended in 1940, Article XII, Section 7 of the Louisiana Constitution provided: "The Louisiana State University and Agricultural and Mechanical College *shall* be under the *direction, control, supervision and management* of a body corporate to be known as the 'Board of Supervisors of Louisiana State University and Agricultural and Mechanical College,' * * *." (Italics ours.)

The history of this constitutional provision is well known. In his 1940 message to the Legislature, the Governor of Louisiana recommended legislation "which will guarantee a depoliticalization of our

---

2. The parking regulations purport to affect only students, faculty, and employees of the University. The regulations specifically provide that visitors to the campus are entitled to use all regular parking spaces. Regulation 30, Tr. 43. The spouses of students and parents transporting students to the campus may be considered as violating such a parking rule, Regulation 30, apparently to avoid students evading the parking regulations through their spouse or through use of their parents' car. From the regulations, we cannot ascribe any mechanism against enforcing fines or vehicle bans against others than students, employees, or faculty. We therefore (see text of opinion) do not consider the possible invalidity of this regulation if sought to be applied against any such others.

. . . universities." Later in the message, he noted that Louisiana State University had been "the storm center" of a politicalized educational system.[3]

To carry out this recommendation, four members of the Senate introduced a Joint Resolution amending Article XII, Section 7 of the Constitution vesting the "direction, control, supervision and management" of the affairs of the University in the Board of Supervisors. Adopted by the legislature as Act 397 of 1940, this amendment to our Constitution was ratified by the People in general election. It is quite clear that the purpose of this amending, in keeping with the executive recommendation, was to remove the administration of the daily affairs of the University from both the Governor and Legislature and place them under a nonpolitical board..

Act No. 668 of 1968 amending Section 7 fortifies the above construction. To provide for the Louisiana Coordinating Council for Higher Education, the constitutional amendment was enacted creating the Council and defining its powers. The following words were added at the beginning of the section: "Except as otherwise provided in this *Section* . . . " This means, in context, that no governmental authority other than the Coordinating Council for Higher Education (created by Subdivision C, added to Section 7 by the 1968 amend-

ment) can intrude into the administration of the affairs of the University. Under the terms of the amendment, even the right of the Coordinating Council to do so is severely limited.

Our interpretation that the intent of the constitution is to grant exclusive administrative power to the Board of Supervisors of Louisiana State University is reinforced by the quite different provision with regard to the State Board of Education. This latter board is constitutionally recognized by the same Section 7 as having "supervision of all other higher educational institutions, *subject to such laws as the Legislature may enact."* Thus, Section 7 provides unambiguously for "direction, control, supervision and management" of Louisiana State University (only) by its Board of Supervisors, but at the same time the Section provides for legislative oversight and regulation of the State Board of Education's administration of other higher educational institutions.

### The "Self-Executing" Question

The previous courts felt that the constitutional provision could not be "self-executing" since the same legislature which adopted it also provided ancillary legislation. La.R.S. 17:421–74 (Act 196 of 1940). This enactment sets forth certain general principles for the administration of the University by the Board of Supervisors.

3. Official Journal of the Senate (1940) pp. 24, 26.

This legislation, incidentally, is not inconsistent with exclusive internal administration of the university's affairs by the Board.

■ The characterization of a constitutional provision as "self-executing" or not is generally only a conclusion as to whether the constitutional intent is to provide a presently effective rule, by means of which the right given may be enjoyed and protected and the duties imposed may be enforced without supplementary legislation. 1 Cooley's Constitutional Limitations, pp. 165–172 (8th Ed., 1927; Carrington, ed.); 16 C.J.S. "Constitutional Law" §§ 48–60; 16 Am.Jur.2d, "Constitutional Law", Sections 93–100. However, as the cited sources note, a constitutional provision may be only partially self-executing and, further, the self-executing character of a constitutional provision does not necessarily preclude supplementary legislation for the better protection of the right secured and in furtherance of the purposes and of the enforcement of the provisions of the constitutional enactment. These sources also indicate that, if the purposes of the constitutional enactment will be frustrated unless immediately effective without legislation, it may be regarded as "self-executing".

The ultimate question, actually, is one of constitutional intent: Whether the enactment is intended to provide a rule to go into immediate effect at the time of adoption.

We do not read State ex rel. Holcombe v. City of Lake Charles, 175 La. 803, 144 So. 502 (1932), relied upon by the plaintiff, nor Coguenham v. Avoca Drainage District, 130 La. 323, 57 So. 989 (1912), relied upon by the court of appeal, as holding contrary to, or inconsistent with, the views above expressed. In both instances, implementing regulatory state legislation was held valid as not inconsistent with a grant by the constitution of authority to a local governmental unit. In each instance, the constitutional intent was held not to be to exclude the legislative implementation in question.

■ In the present case, we hold that the intent of Article XII, Section 7 was, upon ratification of the constitutional amendment, to grant to the university's Board of Supervisors exclusive administrative authority over operation of the university. This constitutional grant was intended to be immediately effective upon ratification, without any necessity for implementing legislation with regard to the exclusiveness of such administrative power.

## Conclusion

■ Especially in view of the specific intent underlying Section 7's adoption, we find that this constitutional provision unambiguously grants the Board of Supervisors full administrative control of the university. The power of "direction, control,

supervision and management" includes not only the power to prescribe courses and decrees, to select faculty, and to hire and fire employees (subject to other provisions of the constitution), but also the power to adopt and to enforce, administratively, reasonable regulations governing the on-campus activity and conduct of faculty, employees, and students.

■ The power to regulate student parking, and to enforce such reasonable parking regulations by administrative penalties (including fines), is clearly within this grant to the Board of Supervisors of exclusive administrative authority over students in their relationship with the university and in their use of the university campus. The legislative act seeking to limit the Board's administrative regulation of student parking is therefore invalid, since by it the legislature sought to interfere with the Board's exclusive administrative power over university affairs, granted to it by our constitution.

### Decree

For the reasons assigned, we therefore reverse the judgments of the trial and intermediate courts, and we enter judgment dismissing this action and rejecting its demand that we declare the university parking regulations invalid insofar as imposing a fine exceeding the $1.00 maximum provided by La.R.S. 17:1803. The plaintiff-

appellee-relator is to pay all costs for which it is responsible by law.

Reversed and dismissed.

BARHAM, Justice, (dissenting).

This suit was filed by the Student Government association of Louisiana State University and Agricultural and Mechanical College of the Main Campus at Baton Rouge against the Board of Supervisors and certain administrative officers of that university seeking a declaratory judgment and injunctive relief. The Student Government Association asked that R.S. 17:1803 be recognized as applicable to L.S.U. and that the Board be ordered to adhere to that state law. The statute in question, R.S. 17:1803 (Acts 1958, No. 297), limits to $1.00 the fine that may be imposed by any state college or university for violation of a parking regulation established by the governing authority of the institution.

The regulations to be observed by students, faculty, staff, and other persons operating motor vehicles on the campus of L.S.U. effective September, 1969, were compiled by the Dean of Student Affairs, approved by the Chancellor, and ratified and adopted by resolution of February 6, 1970, by the Board of Supervisors. Similar regulations were reissued by the Dean of Student Affairs and approved by the Chancellor, to be effective as of Septem-

ber, 1970, without any action by the Board. A summary of the 1970 rules was printed in a pamphlet, "Traffic and Parking Regulations", and distributed to all interested persons.

The pamphlet states that operation of a motor vehicle on the campus is a privilege and that all such vehicles[1] must be registered with the proper authorities. All registered vehicles are assigned parking zones. Between the hours of 7:00 a. m. and 4:00 p. m. on Mondays through Fridays there are certain official areas of the campus that are restricted to the students. In some areas the students may not drive or park their vehicles. These are denoted by an orange-red color on the map in the pamphlet. In other areas the students may not park since all parking is reserved for staff. This area is colored pink-red on the map. Numerous other limitations and restrictions are enumerated.

In providing penalties the violations are divided into two classes. Class "A" includes parking in this official area during the hours of restriction, and the fine for that violation is $5.00 with a ban of the vehicle from the campus for a minimum of two months for three such violations in that Class "A" category. All other parking violations are under Class "B", and the penalty is assessed at $1.00 with a two-month ban for any four Class "B" violations.

It is obvious that the fine for the Class "A" parking violation is contrary to the prohibition of the statute, which reads:

"§ 1803. Parking violations on campuses of state owned colleges and universities; maximum fine

"The fine which may be imposed for violation of any parking regulation established by the governing authority of any state supported college or university in this state, including Louisiana State University and Agricultural and Mechanical College, where the violation occurred upon streets and roadways of such college or university, shall not exceed the sum of one dollar."

The district court reasoned that the Board of Supervisors was under a constitutional duty and had constitutional authority (Article XII, Section 7) to regulate the university, but was subject to the requirement that it act in accordance with the laws of the state, including R.S. 17:1803. It found that this law does not infringe upon the power of the Board to control and regulate traffic. The purpose of the law was interpreted simply to set a monetary limit for parking violations. The district court granted the Student Government Association's motion for summary judgment and declared that R.S. 17:1803.

1. The vehicles referred to are those driven by faculty, staff, students, and employees of agencies housed on the campus.

was applicable to and binding upon the Board of Supervisors of L.S.U. and prohibited the imposition of a fine of more than $1.00 for any parking violation at L.S.U. where the violation occurred on the streets and roadways of the university.

On appeal the Court of Appeal affirmed the judgment of the district court. 251 So.2d 428. It reasoned that the constitutional amendment which granted authority to the Board for the management of the university was not self-executory (Article XII, Section 7), and that it was limited to the creation of an agency whose rights, powers, and duties are to be prescribed by the Legislature, and it held that the Legislature had expressly reserved to itself the authority to control the powers of the Board under the statutory law that set forth in detail the nature and function of the Board, R.S. 17:1421–74, the Louisiana State University Code.

We granted writs in this case for consideration and clarification of the relationship between the Board of Supervisors and the Legislature, and of how Article XII, Section 7, of the Constitution and R.S. 17:1421–74 affect that relationship. And more particularly, we felt it necessary to determine whether the statutory limitation of $1.00 for parking violations on state-supported campuses is applicable to L.S.U. and the Board of Supervisors.

In an attempt to divorce political manipulation from the administration of L.S.U.

the Legislature proposed a constitutional amendment (Acts 1940, No. 397) which was approved by the voters and became the first paragraph of Article XII, Section 7, providing that: "The Louisiana State University and Agricultural and Mechanical College shall be under the direction, control, supervision and management of a body corporate to be known as the 'Board of Supervisors of Louisiana State University and Agricultural and Mechanical College,' * * *." This same article by prior enactment created the State Board of Education to supervise all other higher educational institutions. The article has remained basically the same since the 1940 amendment, except for the 1968 legislation authorizing the creation of a coordinating council for higher education.

Determination of whether a constitutional provision is self-operative is not an easy task. The general criterion used in such considerations is the assessment of the intention of the legislation. This is ascertained from the language used, the object to be accomplished, and the surrounding circumstances. Coguenham v. Avoca Drainage Dist., 130 La. 323, 57 So. 989 (1912).

The Board of Supervisors takes the position that with the adoption of this constitutional provision it was created and became a distinct and separate unit of government with the inherent power to govern itself, free of interference by the legislative, executive, and judicial branches of govern-

ment. In support of its position it cites State ex rel. Bourgeois v. Board of Sup'rs of Louisiana State Univ., etc., 205 La. 177, 17 So.2d 25 (1944), as recognition by this court that except in instances where the action has been arbitrary or capricious, the judiciary has no right to substitute its judgment for that of the Board of Supervisors which derives its authority from the Constitution. The Board urges that this recognition should be extended to include the Legislature.

The Bourgeois case does correctly recognize the judicial limitation on the review of rulings by self-governing bodies. That case does not, however, recognize this limitation because the source of the Board's authority is a constitutional provision granting absolute and independent power over the university. The cases cited as support for this judicial limitation in Bourgeois do not deal with constitutionally created agencies, but simply recognize a general rule of law that courts will not interject their interpretation of factual circumstances where a duly constituted administrative board has made a finding that has not been shown to be arbitrary or capricious.

Article XII, Section 7, created the Board of Supervisors with the authority to direct, control, supervise, and manage L.S. U., but it did not grant such powers so as to make that Board a separate unit of government. There are numerous boards created by the Constitution with similar language used to denote their authority. Article VI, Section 4, establishes and provides for the powers of the Public Service Commission, yet there is extensive statutory regulation of that board, R.S. 45:1161–1202. In some instances the constitutional provision sets forth in detail the functioning of the agency, in others the Legislature is expressly granted the authority to create the agency and enact appropriate laws for its regulation, and in still others the agency is simply created without any specificity. Article XII, Section 7, falls into the last category. In making such comparisons Article VI, Section 1, is interesting. Subsection (A) creates the Wild Life and Fisheries Commission, granting to it general control, management, supervision, and direction over such activities, and then goes into detail outlining the various aspects of the commission's function. Subsection (D) specifically declares Subsection (A) to be self-operative, and yet recognizes the power and authority of the Legislature to act. See R.S. 56:1–1453 which deal in detail with the functioning of the commission.

Considering that the same or similar language has been used in various constitutional provisions to indicate the authority of the agency created by the particular provision there can be no emphasis placed on the language of the pertinent constitutional article here. It cannot be said that

"direction, control, supervision and management" denotes absolute authority under Article XII, Section 7, and something less under other constitutional provisions. The intention of Article XII, Section 7, must be ascertained elsewhere.

The best illustration of the intent of Article XII, Section 7, is found in the simultaneous enactment of Acts 1940, No. 196, which by its very existence acknowledges the necessity of legislation to make that constitutional provision operative. That act was adopted for the following purpose, according to its enacting clause:

"To create a governing body for the Louisiana State University and Agricultural and Mechanical College *to carry into effect Section 7 of Article XII* of the Constitution of Louisiana; to prescribe the powers, authority and duties of such governing body; to regulate the organization, administration and operation of Louisiana State University and Agricultural and Mechanical College; *to provide that no future statute shall be deemed to affect any provision of this act unless the legislative intent thereto shall appear from express language or by necessary implication;*\* to repeal

\* See Fn. 3, infra.

2. In fact, the Board's brief shows support for our interpretation of the relationship between Article XII, Section 7, and R.S. 17:1421–74. It points out that in 1970 when the Legislature proposed a change in the composition and terms of the Board, it passed a statutory amendment to R.S. 17:1453 and 1454, but with the

specifically certain laws, and to repeal all laws or parts of laws in conflict herewith." (Emphasis supplied.)

It is apparent from this clause that this legislation, which has now become R.S. 17:1421–74, was to implement in detail the constitutional provision creating the governing body for the administration of the university. It did not and cannot, however, prevail over the constitutional provision for there is no question of the supremacy of the Constitution over statutory law. If that constitutional provision had not received the approval of a majority of the voters of the state, Acts 1940, No. 196, would have had no effect for there would have been no Section 7 of Article XII of the Constitution to carry into effect.

It is contended by the Board that this cannot be given such meaning since it was enacted five months before the date of the constitutional amendment, and cannot be considered as "subsequent" legislation. Yet the Board gives no explanation as to why the Legislature passed such an act specifically stating as its purpose "to carry into effect Section 7 of Article XII".[2]

express proviso that it was to become effective only if the proposed constitutional amendment to Article XII, Section 7, which provided the same changes, was adopted. Since the constitutional amendment failed to get a majority of the votes of the people, the statutory amendment was without effect. This is a good illustration of the supremacy of the constitutional provision and a modification

Nor does the Board say what effect should be given to Acts 1940, No. 196 (R.S. 17:1421–74). If its argument that it is a separate unit of government free of all interference from the legislative, executive, and judicial branches of government is followed through to its logical end, then these statutes and *any* legislation that has been or will be passed is inapplicable to the Board of Supervisors and its administration of the university.

The Board points out that since the adoption of the special constitutional provision (Article XII, Section 7) for L.S.U. in 1940, there has not been a single statutory word enacted by the Legislature to limit or restrict, in any manner, either the University Code (R.S. 17:1421–74) or the constitutional provision. It does acknowledge that there has been legislation adding to the powers of the Board, citing as examples that creating the new colleges at Shreveport-Bossier City, the Medical School at Shreveport, and LSU–NO. However, it would seem to follow from the argument of the Board that if it were truly independent of the Legislature, there could be no legislation of any kind that would affect the Board in any way.

Other legislation has been passed since the approval in 1940 of the Board of Supervisors. R.S. 17:1802 (Acts 1954, No. 200) authorized and directed L.S.U. to cooperate with the Cordell Hull Foundation in its educational activities. This cooperation included waiver of tuition fees for students receiving aid from the Foundation. By Acts 1971, No. 26 (R.S. 17:1611–1644), a new retirement system was provided for L.S.U. Certainly this legislation affects the Board of Supervisors.

The adoption of Article XII, Section 7, created the Board of Supervisors and provided for its composition, the terms of office, and the selection of officers. These were reiterated and all other details and aspects pertinent to the functioning of the Board are provided in R.S. 17:1421–74. Thus it cannot be said that the Board does not enjoy vast authority over the administration of the university which cannot be interfered with. But at the same time, that Board is subject to compliance with the University Code (R.S. 17:1421–74) and other applicable statutory laws, so long as these laws do not infringe upon the constitutional authority granted to the Board.[3]

of the statutory law when the former is changed so that the two remain in accord. The Legislature has adopted the easiest means to bring about that change by passing the statutory amendment with its application to be held in abeyance until approval of the constitutional amendment.

3. The necessity for compliance is expressly declared by the Legislature in R.S. 17:1425 (Acts 1940, No. 196, Art. 4, Sec. 22) which provides: "No legislation hereafter adopted shall be deemed to include, affect or apply to the university, its board of supervisors, officers and employees, unless such legislative intent ap-

The real question presented for determination in this case, then, is not whether Article XII, Section 7, is self-operative, but is whether R.S. 17:1803 infringes upon the constitutional authority of the Board. The answer to this question must be "no". As noted earlier, the Board of Supervisors has approved a comprehensive program for the control and regulation of motor vehicles on the campus. The statutory limitation on fines affects only one aspect of that program and in no way renders the system inoperative. Further, the Board's regulations show that there are other sanctions that can be used if the university were to find that a fine of $1.00 was insufficient to effectively prevent violations of this particular parking restriction.

For these reasons I respectfully dissent.

pears from the express language of such legislation or results from necessary implication." R.S. 17:1803 expressly includes L.S.U., so that the prerequisite of R.S. 17:1425 has been met.