442 So.2d 598 (1983)
Georgian L. GRACE, et al.
v.
BOARD OF TRUSTEES FOR STATE COLLEGES AND UNIVERSITIES, et al.
No. 83 CA 0145.
Court of Appeal of Louisiana, First Circuit.
November 22, 1983.
Writ Denied January 27, 1984.
*599 J. Rodney Ryan, Baton Rouge, for plaintiffs-appellants Georgiann L. Grace and James B. Potts, Jr.
Winston G. Decuir, Baton Rouge, for defendants-appellees Bd. of Trustees for State Colleges and Universities, Northeast La. University and Faculty Appeals Committee, Northeast La. University.
Before COVINGTON, COLE and SAVOIE, JJ.
COVINGTON, Judge.
This is an action for "declaratory relief and stay of adjudication proceeding." The parties are Georgiann L. Grace and James B. Potts, Jr., plaintiffs, and Board of Trustees for State Colleges and Universities, Northeast Louisiana University, defendants. The plaintiffs appeal a judgment granting the defendants' motion for summary judgment and dismissing the plaintiffs' suit, and denying motion for summary judgment filed by the plaintiffs. We affirm.
The present action arose as a result of faculty grievances filed by Georgiann L. Grace and James B. Potts, Jr. Neither *600 grievance involved a matter of termination or tenure, but pertained to teaching assignments, leaves of absence, and merit raises.
Although not required to establish a faculty appeals procedure, or grievance process, Northeast Louisiana University has established such a procedure. Faculty members are thereby afforded a reasonable opportunity to discuss internal matters of which the faculty member feels aggrieved with department heads, deans, the vice president, and ultimately the grievance committee.
When Northeast Louisiana University refused to allow Grace and Potts to conduct "judicial type" evidentiary hearings at each stage of the grievance process, the faculty members sought a declaratory judgment, to require the university to apply the Administrative Procedure Act, LSA-R.S. 49:951 et seq., to their grievances. The trial court sustained the authority of the Board of Trustees for State Colleges and Universities to manage the internal affairs of the universities, and refused to apply the Administrative Procedure Act to faculty grievance proceedings such as those in which the plaintiffs are involved. The trial court found there was no dispute as to any of the material facts and rendered judgment in favor of the defendants.
The appellants contend that under the facts presented, the trial court erroneously concluded that hearings under the Northeast Louisiana University faculty appeals procedure were not required to be held in compliance with the Administrative Procedure Act; and further the trial court erroneously refused to recognize plaintiffs' property rights or liberty interests cognizable under Article I, Section 2 of the Louisiana Constitution of 1974 and the Fourteenth Amendment of the United States Constitution. There is no contention that any of the facts are in dispute and we will consider the case to be in a proper posture for summary judgment.

SPECIFICATION OF ERROR NO. 1
Article VIII, Section 6 of the Louisiana Constitution of 1974 created the Board of Trustees for State Colleges and Universities, granting unqualified and exclusive powers of supervision and management to that board, as to the universities under its jurisdiction.
Prior to the effective date of the 1974 Constitution, Article XII, Section 7 of the 1921 Constitution vested the now abolished State Board of Education with the authority to supervise those higher educational institutions which were not supervised by the Louisiana State University Board of Supervisors. The powers of the State Board of Education were expressly limited in the 1921 Constitution as "subject to such laws as the Legislature may enact." The Louisiana State University Board of Supervisors was under no such limitation, as the Louisiana Supreme Court recognized in Student Government Association of Louisiana State University, etc. v. Board of Supervisors, etc., 262 La. 849, 264 So.2d 916 (1972).
In equalizing the authority of the management boards, the 1974 Constitution in effect removed the Board of Trustees for State Colleges and Universities, in matters of supervision and management, from the restraints of legislative control. Thus, the authority of the management board was significantly increased under the 1974 Constitution.
In Board of Elementary and Secondary Education v. Nix, 347 So.2d 147, 152 (La. 1977), the Court stated:
... [I]t is significant that the present board's [BESE] powers of administrative supervision and control are expressly to be "as provided by law," unlike those of other educational boards created by subsequent sections of Article 8. The powers of supervision and management granted three other educational boards over the state's colleges and universities are not qualified in this manner, see Article 8, Sections 6 and 7. As to them, distinguishably from the present board, there is thus a constitutional intent to confer upon such other boards self-executing (i.e. enforceable without supplementary legislation) and exclusive *601 administrative authority over the institutions of learning within their jurisdiction. (Emphasis added).
The grant of authority constitutionally vested in the management boards precludes the application of the Administrative Procedure Act to the Board of Trustees. This management board has authority to adopt rules and regulations governing the internal management of the universities without legislative consent or approval.
In addition to the constitutional restrictions to the Administrative Procedure Act, the Act expressly excludes its application to matters such as faculty grievance proceedings. The Act provides regulations for both the rule making and administrative hearing of certain agencies. However, LSA-R.S. 49:951(6) excludes those agency rules promulgated for internal management. The statute provides in part:
(6) "Rule" means each agency statement, guide, or requirement for conduct or action, exclusive of those regulating only the internal management of the agency ... (Emphasis added).
A university grievance procedure, including for example such matters as teaching assignments, salary increases and use of faculty leave, are matters pertaining to the internal management of the university. Hence, the Act, by its own terms is inapplicable to faculty grievance procedures. In handling matters of internal management, a university is neither constitutionally nor statutorily required to provide a grievance hearing. When hearing is accorded a grievant, there is no requirement that the hearing be conducted in accordance with the Administrative Procedure Act.
An adjudication is defined in LSA-R.S. 49:951(1) as an "... agency process for the formulation of a decision or order." Subsection (3) of LSA-R.S. 49:951 defines "decision" or "order" as:
... the whole or any part of the final disposition (whether affirmative, negative, injunctive, or declaratory in form) of any agency, in any matter other than rulemaking, required by constitution or statute to be determined on the record after notice and opportunity for an agency hearing...
The Court in Hagood v. Pickering, 385 So.2d 405, 408 (La.App. 1st Cir.1980); 392 So.2d 130 (La.App. 1st Cir.1980), writ denied 405 So.2d 532 (La.1981), examined the scope of LSA-R.S. 49:951 et seq. and concluded:
... the Administrative Procedures Act does not create an independent right to a hearing. It merely sets forth the procedures to be used if the agency is obligated to hold a hearing by constitution or another statute.
In the present case, the plaintiffs would interpret the university's discretionary right to hold a hearing as a mandatory duty. There exists no legal basis for such interpretation. The fact that a university has instituted a grievance procedure does not necessarily mean that such an action was required. Such authority may be either discretionary or mandatory. Where the authority to conduct a hearing on internal management or operations is discretionary, the hearing does not constitute an adjudication and the Administrative Procedure Act, by its own terms is inapplicable. For general discussion, see Force-Griffith, The Louisiana Administrative Procedure Act, 42 La.L.Rev. 1227 (1982).
Since the university is not bound by the Act, due process need not be defined solely in terms of the Act. Due process is a flexible standard depending on the alleged deprivation. See Frumkin v. Board of Trustees, Kent State University, 626 F.2d 19 (6th Cir.1980).
In the present case, the grievants are offered a reasonably fair opportunity to discuss their purported grievances with their department head and the vice president of the university. In addition, they are able to present their grievances to a grievance committee. Due process is not offended by the university's faculty appeals procedure. The plaintiffs have been provided a meaningful opportunity to be *602 heard and to seek redress for any grievance they may have suffered.

SPECIFICATION OF ERROR NO. 2
The deprivation of property or liberty interests may, in some instances, require a hearing; however, there is no requirement that all hearings be conducted pursuant to the Administrative Procedure Act.
In the present case, as stated above, the university is not subject to the Act. Furthermore, the appellants have not been denied due process relative to their liberty or property interests.
Grace claims a deprivation of property interest based upon removal from a technical writing program. She has equated her eligibility to teach a certain class with entitlement to teach. As an untenured instructor, Grace has no constitutional right to determine which classes she will be assigned to teach. The university administration is responsible for making such decisions. The fact that an instructor seeks to attain the qualifications necessary to teach a course does not create a right to teach that course. As to salary adjustments, it is again within the sound discretion of the university officials to determine the amount of merit pay a faculty member will receive.
Dr. Potts alleges that he has been denied permission to travel for professional growth. A university is not required to permit its faculty members to travel whenever requested. Denial of such a benefit does not deprive the faculty member of any protected rights. The faculty member contracts with the university to teach courses for the academic year. Leave for travel is not a right. The University is not required to grant such a benefit. Furthermore, Dr. Potts did not set forth any facts which would show that he has been treated differently from other similarly situated professors with reference to travel.
The actual format for grievance hearings at N.L.U. was developed at the university level. The format shows that the grievant is allowed to have counsel present, to present evidence supporting the grievance, and to ask questions of opposing witnesses. We find that the grievants in the instant case are afforded due process of law.
In Frumkin v. Board of Trustees, Kent State University, the Court noted, with reference to a faculty appeals hearing:
The judicial model of an evidentiary hearing is neither a required, nor even the most effective method of decision making in all circumstances ... All that is necessary is that the procedures be tailored, in light of the decision to be made, to the capacities and circumstances of those who are to be heard" (citation omitted) to insure that they are given a meaningful opportunity to present their case.
LSA-C.C.P. art. 966 provides that any party may move for a summary judgment. The mover is entitled to summary judgment in his favor "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. Bacon v. Diamond Motors, Inc., 424 So.2d 1155 (La.App. 1st Cir.1982), writ denied 429 So.2d 131 (1983). In other words, a motion for summary judgment must be granted when reasonable minds must inevitably conclude that the mover is entitled to judgment on the facts before the court. Sanders v. Hercules Sheet Metal, Inc., 385 So.2d 772 (La.1980).
For the reasons stated above, the trial court's judgment granting defendants' motion for summary judgment and denying the motion of the plaintiff's is affirmed at appellants' costs.
AFFIRMED.