Dear Dr. Savoie:
You have requested an Attorney General Opinion regarding the payment of tuition and fees owed for educational services provided to students that transferred to public higher education institutions because the institution in which they originally enrolled closed as a result of a hurricane. You state that immediately after Hurricane Katrina struck Louisiana, leadership of the higher education systems of the state unanimously agreed that a public statement of policy would be announced indicating that students enrolled in higher education institutions of the state closed as a result of the disaster would be allowed to reenroll in another Louisiana public institution without having to pay any additional tuition and fee charges. The Board of Regents is currently determining the process whereby the public institutions that provided educational services to transferring students will be compensated for the services rendered.
This issue involves students who made payments of tuition and fee charges to their original "home" public institution, but transferred when the "home" institution closed and have since been attending a "host" public institution. You are proposing that the "host" public institutions be compensated through direct payments from the "home" public institutions. You state that if payments are made directly between institutions, the Board of Regents will coordinate and oversee such fund transfers. The Board of Regents is currently collecting data and information regarding amounts due between institutions. Amounts due to students that did not reenroll at any Louisiana public institutions will be refunded in their entirety directly to such students.
The question that has arisen in the determination of the process to compensate the "host" institutions is whether the direct payment between institutions process described above can be used or if the "home" institution must make a refund directly to the student. It is your position that the money was paid to a state institution and that the home institution is contracting with another state institution to provide the educational services to the student; *Page 2 
therefore a payment from the "home" to the "host" is simply a reimbursement for the cost of those services provided.
In the scenario that you have presented, whether the funds can be transferred directly from the "home" institution to the "host" institution is dependent upon the following: 1. the relationship between the students in question and their "home" institutions continuing after enrollment in a "host" institution; 2. public higher education systems having the authority to enter into agreements wherein "host" institutions would provide educational services on behalf of "home" institutions to students enrolling therein for compensation; and 3, there being such an agreement between the public higher education systems, whereby the "home" institution is obligated to compensate the "host" institution. The question of whether these three factors exist is one of fact.
The relationship between a student and a public university is primarily contractual in nature, such that general contract concepts and theory are applicable to the relationship. Contractual relationships can be created expressly in writing or verbally. The terms of the relationship between a student and a public university are not embodied in one document, but are found in a number of documents, including registration forms, the student handbook and catalog, housing agreements, and other relevant documents. Verbal assertions can also create terms of the relationship. Generally, the university agrees to provide the student with educational services and the student agrees to perform financially, academically, and behaviorally in accordance with the university's rules and regulations. Because the relationship spans from matters involving definable rights and obligations of the parties, like housing and food service, to matters not as easily defined, like those involving academic programs and student discipline, a strict application of classic contract principles is not possible.
The relationship between a student and a public university is continuous throughout each semester unless terminated by one of the parties. In the facts you describe, the "home" institution was no longer capable of providing the educational services that formed the basis of its relationship with the students enrolled therein. As described, the statement of public policy of the public higher education systems of the state was that "host" institutions would provide educational services to students reenrolling in a public institution without requiring the students to pay tuition and charges, which were paid to their "home" institution. Thus, it appears that each student had the option, provided through the aforementioned policy of the public higher education systems, to continue his or her fall semester at a "host" Louisiana public institution.
The students at issue in this discussion fall into two categories: 1. those that did not reenroll in another public institution in this state; and 2. those that reenrolled in another public institution in the state. You indicate that amounts due to students that did not *Page 3 
reenroll in any Louisiana public institution will be refunded in their entirety directly to such students. We believe that refunding such amounts is the appropriate course of action because by not reenrolling in another Louisiana public institution, the relationship between the student and the institution terminated.[1]
As to students that reenrolled in another public institution in the state, based on the facts described, the relationship between the student and his or her "home" institution appears to not have terminated. Other public institutions in the state simply acted as "host" institutions for such students pursuant to the policy of the public higher education systems. The educational services the public institution originally agreed to provide were provided, just in a different form, with each student's agreement to such being evidenced by his or her reenrollment in another public institution after being provided with the option to do so at no additional cost. Essentially, the terms of the relationship between the student and the public university were modified to include educational services being provided by another institution. It is therefore our opinion that because the relationship between the student and the public university did not terminate and the university provided educational services to the student, the student does not have to be refunded tuition and fees paid to his or her "home" institution.[2]
The second issue that is determinative of whether the funds can be transferred directly from the "home" institution to the "host" institution is whether public higher education systems have the authority to enter into agreements wherein "host" institutions would provide educational services on behalf of "home" institutions to students enrolling therein for compensation. The public higher education systems are created in Article VIII of the Louisiana Constitution of 1974.[3] The higher education boards created in the Louisiana Constitution are given the authority to supervise and manage institutions within their systems. Louisiana Courts have interpreted this authority as being self-executing and *Page 4 
granting unqualified and exclusive powers of supervision, management and administration to the boards as to the universities under their respective jurisdictions.[4] In addition to this constitutional authority, the higher education boards are granted specific statutory authority in La. R.S. 17:3551. La. R.S. 17:3551(A), in pertinent part, provides:
 A. Subject only to the powers of the Board of Regents specifically enumerated in Article VIII, Section 5 of the Constitution of Louisiana, and as otherwise provided by law, each postsecondary system management board as a body corporate shall have authority to exercise power necessary to supervise and manage the institutions of postsecondary education under its control, including but not limited to the following:
 * * *
 (16) Enter into contracts and agreements with other public agencies with respect to cooperative enterprises and undertakings relating to or associated with college or university purposes and programs, in accordance with applicable laws.
 * * *
Based on the foregoing constitutional and statutory authority, it is our opinion that the higher education systems have the authority to enter into agreements wherein "host" institutions would provide educational services on behalf of "home" institutions to students enrolling therein for compensation.
Finally, in order for the funds to be transferred directly from the "home" institutions to the "host" institutions, there must be an agreement that establishes an obligation of the "home" institutions to compensate the "host" institutions. The facts presented and the reenrollment and acceptance of students by the "host" institutions demonstrates that the policy agreed to by the higher education systems permitted the continuation of the student-university relationship. However, it is unclear whether there was any agreement as to compensation of the "host" institutions, which would have created an obligation of the "home" institutions. If there is such an agreement, it is our opinion that, subject to any appropriation *Page 5 
restrictions, payments can be made directly from a "home" public institution to a "host" public institution.[5]
I hope this opinion sufficiently addresses your concerns. If I can be of further assistance, please let me know.
Very truly yours,
 CHARLES C. FOTI, JR. ATTORNEY GENERAL
 By:_____________________________ KATHERINE M. WHITNEY Assistant Attorney General
[1] See La. Atty. Gen Op. No. 86-120, wherein this office found that it was appropriate to return fees paid by students following the closure of vocational technical school classes or programs resulting in the school being unable to fulfill its obligation. Note that this opinion did not involve a vocational technical school fulfilling its obligation through an alternative method. La. Atty. Gen. Op. No. 86-120 involved a student-school relationship that terminated.
[2] We reach this conclusion generally, based on the facts provided, but recognize that there may be individual situations and facts that would result in a different conclusion.
[3] La. Const. art. VIII § 6 creates the Board of Supervisors for the University of Louisiana System; La. Const. art. VIII § 7
creates the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College and the Board of Supervisors of Southern University and Agricultural and Mechanical College; and La. Const. art. VIII § 7.1 creates the Board of Supervisors of Community and Technical Colleges.
[4] See Student Gov. Ass'n of L.S.U. v. Board of Supervisors,262 La. 849, 264 So.2d 916 (1972); Board of Elementary andSecondary Education v. Nix, 347 So.2d 147 (La. 1977); and Gracev. Board of Trustees for State Colleges and Universities,442 So.2d 598 (La.App. 1st Cir. 1983).
[5] Please note that we recognize that students' tuition and fees are paid from a variety of sources. This opinion does not address any limitations to a direct transfer of funds, if any, that may be imposed by the specific source of funding. Our finding regarding direct payments relates to those funds upon which there are no limitations. In addition, we do not address any procedural requirements that may be imposed on public agencies when transferring funds.